[S. F. No. 8213.    In Bank.—October 11, 1917.]

ANDREW MARTIN, Petitioner, v. SUPERIOR COURT OF ALAMEDA COUNTY et al., Respondents.

COMMON LAW AS RULE OF DECISION—CONSTRUCTION OF POLITICAL CODE, SECTION 4468.—Section 4468 of the Political Code, making the common law of England the rule of decision in all courts of the state so far as not repugnant to or inconsistent with the constitution of the United States or the constitution or laws of this state, had in contemplation the whole body of common-law jurisprudence as it stood, influenced by statute at the time when the code section was adopted, and embraced equity also in its contemplation.

ID.—SUING IN FORMA PAUPERIS — POWERS OF ENGLISH COURT.—The power to remit fees was one of the inherent powers of the English courts quite independently of statute.

SUING IN FORMA PAUPERIS—POWERS OF SUPERIOR COURT.—The power in this state to admit suitors *in forma pauperis* exists in our courts of general jurisdiction without statute.

ID.—JUSTICES' COURTS—CONSTRUCTION OF SECTION 91, CODE OF CIVIL PROCEDURE.—It is quite plain that the legislature by this section, recognizing the power of courts of record to admit suitors *in forma pauperis* expressly conferred the power upon inferior courts of limited jurisdiction with the design to save all question.

ID.—POWERS OF COURT NOT CURTAILED BY STATUTE.—Statutes, such as section 4295 of the Political Code, and other general statutes dealing with the collection and disposition of fees, have reference only to cases where the court has not remitted the fees and are neither individually nor collectively susceptible of the construction that they were designed to deny to the courts the exercise of their inherent power to remit fees.

ID.—SUFFICIENCY OF FACTS—ATTORNEY'S CONTINGENT INTEREST.—Information and belief of the judge that an attorney has a contingent interest or fee dependent on the outcome of the litigation does not justify refusal of permission to sue *in forma pauperis* in a proper case.

ID.—RIGHT TO JURY TRIAL.—One who is permitted to sue without payment of court fees is not by their remission deprived of his right to a trial by jury.

ID.—ENTITLING MOTION PAPERS.—A notice of motion for leave to further prosecute *in forma pauperis* is not misleading because entitled as a notice of motion "for leave to sue."

ID.—USE IN PETITION OF TERM "FORMA PAUPERIS."—The use in the moving papers of the term *forma pauperis* sufficiently identifies

CLXXVI Cal.—19

the motion to be made, although those words are not found in any statute.

Id.—Right to Prosecute Action.—One who has paid the original filing fees on commencing an action is not thereby debarred from the right to apply for a remission of subsequent fees.

Id.—Affidavit of Merits.—An affidavit of merits is not a prerequisite to a motion for leave to prosecute an action *in forma pauperis.*

APPLICATION for Writ of Mandate to be directed against the Superior Court of the County of Alameda. Hon. T. W. Harris, Judge.

The facts are stated in the opinion of the court.

Elwin B. Carson, and C. A. Linn, for Petitioner.

D. C. Dutton, for Respondents.

Alden Ames, for Legal Aid Society, *Amicus Curiae.*

HENSHAW, J.—Plaintiff commenced this action in the superior court of the county of Alameda against Ergo A. Majors, to recover damages for the death of plaintiff's minor daughter, alleged to have been occasioned by the wrongful acts of Ergo A. Majors. After the commencement of this action this petitioner, who is a day laborer, married and the father of ten minor children, all of whom are living and dependent upon him for support, sought leave of the court to be allowed to prosecute his action *in forma pauperis.* His application was supported by an affidavit to the effect that, saving for his chose in action, he was not possessed of more than $25, and that no one saving himself was interested in the successful prosecution of the action. The superior court denied his application. He sought by mandate from the court of appeal to secure an order directed to the superior court of Alameda County compelling the latter court to grant his application. The court of appeal declined to issue the mandate, assigning no reasons for its order refusing to issue the writ. It was in effect a dismissal. Application then being made by petitioner to this court, an alternative writ of mandate was issued.

The fundamental question thus presented is of the right of the petitioner to proceed with the prosecution of his action in the superior court *in forma pauperis,* and therefore without

the payment in advance of the legal fees. Certain minor subsidiary questions are raised by respondents, going to the asserted insufficiency of the papers filed in support of the application made to the superior court, but the principal answer of respondents is based upon our laws and their construction of those laws. Thus it is pointed out that by section 631 of the Code of Civil Procedure, "Trial by jury may be waived by the several parties to an issue of fact in actions arising on contract, or for the recovery of specific real or personal property. . . . 5. By failing, at the beginning of each day's session, to deposit with the clerk the jury fees and, if there be any, the mileage for such day."

Further, that the statutes of 1871–72 (Stats. 1871–72, p, 188) declare that in civil cases the party in whose favor verdict is rendered, before the same shall be entered, shall pay the jury fees, and that if in any trial in a civil case the jury be for any cause discharged without finding a verdict, the fees of the jury shall be paid by the party who demanded the jury. Still further, that section 4295 of the Political Code forbids state, county, and township officers from performing any service for which fees may be required (saving in proceedings on *habeas corpus*) without prepayment of such fees, excepting from the operation of this law only the state and any county, city, city and county, public officer, board, or body acting in his or its official capacity, and that only upon the payment by any person of the fees required by law is it made the duty of the officer to perform the required services. And, finally, we are referred to a rule of the superior court of the county of Alameda to the following effect:

"In the trial of a civil action by a jury, each party is required daily, during the trial, at or before the case is called for trial each day, to deposit with the clerk the amount of money necessary to pay the jury fees, including mileage for such day and one-half of the reporter's fees. Out of the money so deposited the clerk shall pay the reporter's fees. The jury fees shall be paid out of the moneys deposited by the party who is required by the statutes of this state to pay the same. All moneys not required to be paid out pursuant to this rule shall be returned by the clerk to the party depositing the same."

We have thus been at pains to set forth all of the written laws which respondents present, since it is by virtue of these laws that they insist that the order of the superior court of

Alameda County refusing to grant petitioner's application was well founded. Indeed, they go further and assert that by virtue of these laws the court had no power to grant the application. Herein their argument is that the right of one so to commence, and having commenced to prosecute, his action *in forma pauperis* is a right unknown to the common law; it exists only by virtue of statute and goes no further than the statute permits; that in the English law it owed its origin solely to statute. Next (so runs respondents' argument) our adoption of the English common law as the basis of our jurisprudence was an adoption of *lex non scripta,* the immemorial usage and custom out of which grew the common-law system, and, therefore, the English statutes, however ancient, form no part of the body of that law. Finally, the argument is that under the English law the authority of the court to waive fees under a pauper's application rested wholly upon statute and formed no part of the inherent common-law power of those courts. From this the conclusion is advanced, as being unescapable and controlling in the matter, that as our statutes have not in terms, nor yet by necessary implication, vested our courts with power to waive fees upon such poor man's petition, it cannot be done.

Little need be said as to the meaning of the language of our Political Code (section 4468), which makes the common law of England, so far as it is not repugnant to nor inconsistent with our constitution and laws, the rule of decision in all the courts of this state. Learned, indeed exhaustive, discussions of the matter will be found in 8 Cyc. 366, and the note in 30 (1913 ed.) Am. & Eng. Ann. Cas. 1222, 1252, [Ann. Cas. 1913E, 1222, 1252]. But as the matter seems to be seriously pressed upon the attention of this court, under the statement that we have not distinctly defined the meaning of this section of the Political Code, and as it is further said that our decisions adverting to the matter (such as *People* v. *Vasquez,* 9 Cal. App. 548, [99 Pac. 982] ; *Ex parte Karlson,* 160 Cal. 382, [Ann. Cas. 1912D, 1334, 117 Pac. 447] ; *Peters* v. *Peters,* 156 Cal. 34, [23 L. R. A. (N. S.) 699, 103 Pac. 219] ; *City of Pasadena* v. *Superior Court,* 157 Cal. 794, [21 Ann. Cas. 1355, 109 Pac. 620] ; *Estate of Sutro,* 155 Cal. 733, 102 Pac. 920] ; *McDaniel* v. *Cummings,* 83 Cal. 518, [8 L. R. A. 575, 23 Pac. 795] ; *Estate of Fair,* 132 Cal. 534, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000]), point to the

conclusion that the language of the section of the Political Code above mentioned is to be construed as referring solely to the *lex non scripta,* the common law unmodified by statute, it is here proper to say that such a view of our decisions is completely mistaken. It would be strange, indeed, if our legislature should have designed to limit the applicability of the code section to the ancient and frequently most barbarous rules and customs of the common law, and in so doing refuse to take into account the mitigation of their harshness and the broadening of the rules themselves which followed the successive enactments of the English statutes. To the contrary, we hold that our legislature in its use of the phrase "common law" had in contemplation the whole body of that jurisprudence as it stood, influenced by statute, at the time when the code section was adopted. And more than that, that it embraced also in its contemplation the great handmaiden and coadjutor of the common law, equity. And in exemplication of this we need but refer to the language of this court in *Katz* v. *Walkinshaw,* 141 Cal. 116, [99 Am. St. Rep. 35, 64 L. R. A. 236, 70 Pac. 663, 74 Pac. 766]. Manifestly no harm can be done by this construction of the language of the code, since that language itself limits the applicability of the common-law system to such of its rules and principles as are not repugnant to nor inconsistent with the spirit of our own law. And if we needed further support than that given by pure reason on so plain a proposition, it can be found in the similar construction which the supreme court of the United States has put upon the language of one of its own statutes, "saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it." The supreme court of the United States construes this language not to be limited to remedies as they existed at common law, but to embrace such substituted remedies as might be provided by statute, and still further, to such relief as equity might afford, equity being for this purpose considered as a branch of the common law. (*North Pacific Steamship Co.* v. *Industrial Accident Commission,* 174 Cal. 346, [163 Pac. 199]; *Knapp, Stout & Co.* v. *McCaffrey,* 177 U. S. 638, [44 L. Ed. 921, 20 Sup. Ct. Rep. 824].)

But quite independently of this determination, there is still the controlling fact that the power of the English common-law courts to remit fees on petition *in forma pauperis* did not have

its origin in any statute, but was in fact exercised as one of the inherent powers of the courts themselves, quite independently of statute. And this one would naturally expect to find since, imperfect as was the ancient common-law system, harsh as it was in many of its methods and measures, it would strike one with surprise to be credibly informed that the common-law courts of England shut their doors upon all poor suitors who could not pay fees, until parliament came to their relief. Even greater would be the reproach to the system of jurisprudence of the state of California if it could be truly declared that in this twentieth century, by its codes and statutes, it had said the same thing, and yet this is precisely the position which respondents to this application take.

Respondents do cite certain authorities, such as *Hoey* v. *McCarthy,* 124 Ind. 466, [24 N. E. 1038] ; *Campbell* v. *Chicago & Northwestern Ry. Co.,* 23 Wis. 490; 11 Cyc. 200, where it is declared that this power rests upon statute, and therefore cannot be exercised saving under the statute. An examination satisfies us that this error in the declaration of these courts and others has arisen from a misconstruction of the language of Blackstone's Commentaries. He declares as follows: ''And paupers, that is, such as will swear themselves not worth five pounds, are, by statute (Stats. 11 Hen. VII, c. 12), to have original writs and *subpoenas gratis,* and counsel and attorney assigned them without fee; and are excused from paying costs, when plaintiffs, by the statute (Stats. 23 Hen. VIII, c. 15), but shall suffer other punishment at the discretion of the judges. And it was formerly usual to give such paupers, if nonsuited, their election either to be whipped or pay the costs: though that practice is now disused.'' It will be noted that Blackstone does not found the existence of the power upon statute. He is merely discussing the exercise of the power under existing statutes, which is of course a wholly different matter. But a very brief review will establish that the power was an existent power, recognized and exercised before the enactment of these or other acts of parliament. Thus says Marshall in his ''Law of Costs in all Suits and Proceedings in Courts of Common Law'' (page 347) : ''With a view to enable such poor persons as have not ability to pay the expenses incidental to the prosecution of an action to enforce their rights, they may, upon such inability being shown, be admitted to sue *in forma pauperis.* When so admitted the

plaintiff is exempt from the payment of court fees, and he is entitled to the service of counsel, and of an attorney, who render their services without reward. This privilege, so far as regards the exemption from court fees, was conceded at common law; for where the plaintiff swore that he was unable to pay for entering his pleadings, the officer was bound to enter them *gratis.*"

In the case of *Mounford* v. *Pate,* 82 Eng. Rep., Full Reprint, p. 1093, S. C., 1 Keble's Rep. 913, the motion was made on behalf of a plaintiff applying *in forma pauperis* to be discharged of costs "there being none at common law and paupers thereby discharged." Discussion followed, and "the court agreed with Twisden that the continual practice being to assess costs, the plaintiff (*in forma pauperis* who has suffered nonsuit) must pay them or submit to be whipt at election." In *Brunt* v. *Wardle,* 133 Eng. Rep., Full Reprint, 1254, the principal question before the justices was whether a plaintiff upon the institution of his action must make application to sue *in forma pauperis,* or whether such order could be made after the commencement of the action to enable a plaintiff to prosecute it *in forma pauperis.* Tindal, C. J., and his associate justices held that it was within the power of the court to make the order after the commencement of the action, the chief justice saying: "After all, is the Stats. 11 H. VII, c. 12, anything more than confirmatory of the common law? In the learned report of the Serjeants' case by my brother Manning, p. 41, note (d), a case is referred to that occurred in the Stats. 15 Ed. IV, twenty years before the passing of that act, from which it appears that at common law if a party would swear that he could not pay for entering his pleadings, the officer was bound to enter them *gratis;* and that in this court there was a presignator *pur les poers.* It seems to me that the proper conclusion for us to come to is, that this plaintiff was entitled to be admitted to sue *in forma pauperis, pendente lite,* and that the rule must be discharged," and Maule, J., added: "I am also of opinion that this rule should be discharged. The objection to the order of my brother Coltman is that the court has no power to admit a party to sue *in forma pauperis, pendente lite;* and the objection is sought to be supported by the recent decisions in the court of exchequer. Those decisions, however, are open to the observations which have been already made—that they were cases relating to

costs, and that the attention of the court does not appear to
have been called to the undoubted common-law authority of
the court to admit parties to sue *in forma pauperis.* The
authority cited by my lord from the Serjeants' case shows that
so early as the Stats. 15 Ed. IV it was the established prac-
tice to admit a party to sue *in forma pauperis:* and various
instances are to be found in the books of parties being so
admitted after the commencement of the suit.'' This case,
decided so recently as 1841, may well be regarded as conclu-
sive in its construction of the common law of England and
controlling upon our section of the code making that law the
basis of our jurisprudence, and this quite apart from any con-
sideration of the modifications of the common law of England
worked by acts of parliament.

It is pointed out that our Code of Civil Procedure (section
91) makes express provision for the right of a suitor in a jus-
tice court to prosecute such an action *in forma pauperis,* while
no such express provision of our statute is made applicable
to our courts of record. Thus section 91 of the Code of Civil
Procedure declares that the payment of fees in advance ''shall
not be exacted from parties who may prove to the satisfaction
of the presiding justice that they have a good cause of action
and that they are not of sufficient pecuniary ability to pay the
legal fees.'' Again we say that it would be an unmerited
reproach cast upon the legislative branch of our state govern-
ment to hold that it meant to permit a suitor to prosecute his
action *in forma pauperis* in a justice court, where the amount
involved could not be large nor the consequences of the liti-
gation great, and yet designed to forbid such a poor suitor
from prosecuting his action according to the laws of the land
in a court of record, where rights might and could be all-
important and his recovery of the utmost consequences. No
such reproach justly attaches. It is quite plain that the legis-
lature, recognizing the power of courts of record to admit
suitors *in forma pauperis,* designed to save all question in the
case of inferior courts not exercising common-law jurisdiction,
and that it is for this reason that the power which exists in
our courts of general jurisdiction without statute is expressly
conferred upon the inferior courts of limited jurisdiction.

With the power in our superior courts thus declared, to
admit suitors to commence or having commenced to prosecute
their actions *in forma pauperis* in all proper cases, the next

consideration is whether or not the legislature has by its enactments designed to curtail that power. Quite aside from the question as to the power of the legislature to do this thing, it is obvious that only the plainest declaration of legislative intent would be construed as even an effort to do this thing. We find no such expressed intent. All of the statutes dealing with the payment and prepayment of fees, such as section 4295 of the Political Code, are general in their nature and have to do with the orderly collection and disposition of the fees, payment or prepayment of which is prescribed by law. Neither individually nor collectively are they even susceptible of the construction that the design of the legislature was to deny to the courts the exercise of their most just and most necessary inherent power. They have applicability to all cases where the court has not, in the exercise of that power, remitted the payment of the fees on behalf of a poor suitor, and in every instance the court's order to this effect is sufficient warrant to every officer charged with the collection of fees to omit the performance of that duty in the specified case.

Our next consideration is the narrow one of objections urged by respondents to the sufficiency of the petitioner's moving papers addressed to the superior court. Certain of these appear in the verified return of the judge of that court. The plaintiff's verified petition before the superior court declared that no person other than himself had any interest in the successful prosecution of the action. The judge's return declares that he had information and belief to the effect that the attorneys for the plaintiff had a contingent interest, being a contingent fee, in the successful outcome of the litigation, and that for this added reason the plaintiff's application was refused. But if it be conceded that issue was here joined upon the direct averment of plaintiff's petition, something more is required as to the nature, source, origin, and soundness of the court's belief, before its order can be upheld on this ground. This showing is not made. Yet in view of the fact that the attorneys for the plaintiff were before the superior court, it could most easily have been made. Next it is said that plaintiff was not remediless, since the order of the court refusing to grant his application deprived him merely of his right to a trial by jury, but left open to him the trial of his cause without a jury. Little need be said to show the inadequacy of such a response. Where the suitor was allowed to

prosecute *in forma pauperis,* all the rights which were open to him upon the payment of fees were open to him by virtue of the order, and every officer was required to perform his duty without the payment of fees as fully as though the legal fees had been paid. Precisely as anciently such a plaintiff *in forma pauperis* was entitled to prosecute his action ''after the course of the common law,'' so in this state he is equally entitled to prosecute his action under our constitution and laws, and the right of trial by jury is one of the most important of these. Therefore we ·will not say that a suitor who can pay court fees shall have his trial by jury and the suitor who cannot pay court fees must be content to go to trial without a jury. The law does not say this, and we will not read such a declaration into the law.

Respondents' final contention is that petitioner's moving papers before the superior court were defective. (1) They were entitled ''Notice of Motion for Leave to Sue *in Forma Pauperis,*'' whereas in fact it was not a motion for leave to sue, but a motion for leave further to prosecute the action *in forma pauperis.* Suffice it here to say that the misnomer could have misled, and in fact did mislead, nobody. (2) The moving papers were imperfect in not defining what was meant by the request ''for permission to prosecute the above-entitled action *in forma pauperis,*'' since the phrase ''*in forma pauperis*'' is not used in the statutes of this state. But we cannot yield acquiescence to the suggestion that the learned judge or the learned attorneys for the defendant did not fully understand the meaning of this Latin phrase so frequently employed in the common law. (3) The moving papers are said to be deficient in failing to specify the remission of just what fees was sought by plaintiff. It seems quite manifest that he sought, as he had the right to seek, the remission of all fees exacted by law. (4) It is said that there was a failure to show that the application was seasonably made. What we are to understand by this is not made plain. We have shown, and indeed quoted from the decisions showing, that the right to prosecute *in forma pauperis* was fully recognized with the right to *commence* an action *in forma pauperis.* The right here sought is the right to prosecute after the plaintiff had paid the original filing fees for the commencement of the action. Certainly by having paid this first fee he did not debar himself of the right to

make future application for a remission of subsequent fees.
(5) The application was accompanied by an affidavit of
merits made by plaintiff and declaring "that he has stated
the facts of his said suit to said C. A. Linn, Esq., attorney
at law, and is advised that he has a good, sufficient, and just
cause of action against the defendant." Such cases as *Nick-
erson* v. *California Raisin Co.,* 61 Cal. 268, *People* v. *Larue,*
66 Cal. 235, [5 Pac. 157], and *Jensen* v. *Dorr,* 9 Cal. App.
18, [98 Pac. 45], are relied on in support of the deficiency
of this affidavit of merits. The cases are in point, but to
support such an application as this, an affidavit of merits
going to the justice and sufficiency of the cause of action is
not called for by our law, nor was it called for by the com-
mon law. At common law the unfortunate suitor whose
cause of action proved to be nonmeritorious stood liable to
be "whipt." Further, we are advised that the attention of
the superior court was not in any way directed to this
asserted insufficiency in the affidavit of merits. An amended
affidavit could and would doubtless have been filed. More-
over, the case was at issue on matters of fact, and there was
a sufficient showing in the complaint at least of a meritorious
cause of action. Therefore, while the court may call for a
sufficient affidavit of merits, or indeed for any other form
of satisfactory evidence before issuing its order allowing an
action to be *commenced in forma pauperis,* the need of such
supporting affidavit becomes very much less when, as in this
case, the action has been brought and is at issue on its facts.
Nor would such a defective affidavit of merits justify the
court in refusing to the poor suitor the relief sought, if in
all other respects he was entitled to it, without at least giving
him an opportunity to present an affidavit measuring up to
the requirements of the law.

For these reasons we hold that the court erred in refus-
ing to grant the order prayed for. Let mandate issue
accordingly.

Melvin, J., Lawlor J., Lorigan, J., and Angellotti, C. J.,
concurred.

SHAW, J.—I concur in the judgment and in all of the
opinion of Mr. Justice Henshaw except the statements to
the effect that the "common law of England," referred to

in section 4468 of the Political Code as the rule of decision in this state where not repugnant to or inconsistent with our written law, includes that law "as it stood influenced by statute, at the time when the code section was adopted," that is, on April 13, 1850. (Stats. 1850, p. 219.) This proposition, as the opinion shows, is not necessary to the decision, for the right to sue *in forma pauperis* existed at common law in England before any statutes regulatory thereof were enacted. In 1850 there were in England, I have no doubt, many general acts of parliament in force which no one would claim were adopted as parts of our law by the act of our legislature. The statement of what is included by that section needs more qualification and elaboration than is given to it in the main opinion. I think it inadvisable to attempt to state any rule on the subject, except in cases where it is necessarily involved.

Sloss, J., concurred.