[S. F. No. 9025. In Bank.—September 24, 1919.]

ERGO A. MAJORS, Petitioner, v. SUPERIOR COURT OF ALAMEDA COUNTY, etc., et al., Respondents.

[1] Costs — Prosecution of Action in Forma Pauperis — Discharge of Jury—Amendment of Complaint—Further Prosecution of Action Without Payment of Fees—Construction of Statute of 1917.—The act of 1917 (Stats. 1917, pp. 788, 789), providing if in any trial in a civil case the jury be for any cause discharged without finding a verdict, the fees of the jury shall be paid by the party who shall have announced that a trial by jury is required, and until they are paid no further proceedings shall be allowed in the action, does not require a plaintiff suing in forma pauperis to pay the fees of the jury, where the jury was discharged before the close of the trial in order to permit the plaintiff to amend his complaint, in the absence of any showing of vexatious conduct.

[2] Id.—Dispauperization of Litigant—Discretion.—The question whether one once admitted to sue in forma pauperis should, on account of vexatious conduct, delay, etc., be prevented from having further benefit of uncompensated service, is one for the court having jurisdiction in the case or proceeding to determine in the exercise of a wise discretion, which discretion, as in the case of one originally seeking to be admitted to sue in forma pauperis, should be exercised with a view to confine the privilege most strictly to those who, having a substantial right to enforce or preserve, are absolutely unable otherwise to so do, and who, once having been admitted to proceed in forma pauperis, diligently pursue a course free from unreasonable delay or vexatious conduct of any kind.

[3] Id.—Manner of Exercise of Discretion.—Such discretion should be used with the utmost care to the end that unworthy persons who are neither indigent nor possessed of substantial rights may not enjoy the privilege.

PROCEEDING in prohibition directed against the Superior Court of Alameda County and T. W. Harris, Judge thereof, to stay proceedings in a civil action.   Petition denied.

The facts are stated in the opinion of the court.

D. C. Dutton, H. F. Peart and Green Majors for Petitioner.

Ezra W. Decoto, T. P. Wittschen, C. A. Linn and U'Ren & Beard for Respondents.

MELVIN, J.—When this case was in the district court of appeal of the first appellate district, Division No. One, Mr. Justice Waste prepared the opinion of the court, which was as follows:

"Application for writ of prohibition prayed to be directed against the superior court of the state of California in and for the county of Alameda, Hon. T. W. Harris, judge thereof, staying proceedings in a civil action therein pending, until plaintiff therein shall have paid the fees of the jurors in the first trial, the jurors having been discharged without finding a verdict.

"Andrew Martin, as plaintiff, commenced an action against the defendant Majors [petitioner here], to recover damages for the death of plaintiff's minor daughter, alleged to have been occasioned by the wrongful acts of said defendant. When the case was at issue and ready for trial, Martin demanded a trial by jury and sought to be allowed to further prosecute the action *in forma pauperis*. The superior court denied him that right and refused to proceed to trial without prepayment of the fees for the jury, as required by the then existing statutes and the rules of the court.

"On application to the supreme court that tribunal issued its peremptory writ of mandate directing the lower court 'immediately upon receipt of the writ to issue an order, in due form of law, granting petitioner leave to prosecute his said suit . . . *in forma pauperis* . . . without being required to pay any costs.' (*Martin v. Superior Court,* 176 Cal. 289, [L. R. A. 1918B, 313, 168 Pac. 135].)

"Thereafter, pursuant to the direction of said writ, respondents set the action for trial, a jury was impaneled and

sworn, and the trial of the cause proceeded *in forma pauperis.*
During the trial, the jury having been in attendance two
days, the plaintiff Martin obtained leave to amend his com-
plaint. Defendant, petitioner here, was given time to answer
and the jury was discharged. The fees for the jury were not,
and have not, been paid.

"On motion of the plaintiff in the action, and over the
objection of the defendant [petitioner here], the lower court
has reset the cause and is about to proceed with the trial
on the day set. Respondents in their return admit, or allege,
the foregoing facts 'and in this connection allege that there
is no provision in the statutes of this state or in the law of
this state, providing for the payment of jurors serving in
civil cases, where the action is being prosecuted by the plain-
tiff *in forma pauperis.*'

"In this contention respondents are correct and the action
of the trial court must be upheld.

"In opposition to the respondents, petitioner relies upon
provisions of the California statutes establishing fees of
trial jurors, and decisions of the highest courts in this and
other jurisdictions, which he contends by analogy and parity
of reasoning support his views. In the most recent legis-
lative enactment on the subject it is provided:

" 'If in any trial in a civil case the jury be for any cause
discharged without finding a verdict, the fees of the jury
shall be paid by the party who shall have announced that a
trial by jury is required, but may be recovered as costs if he
afterwards obtain judgment; *and until they are paid no fur-
ther proceedings shall be allowed in the action.*' (Stats. 1917,
pp. 788, 789.) The italics are ours for illustration.

"Section 17 of the act of March 28, 1868 (Stats. 1867–68,
p. 436), provides: 'If, in any trial, in a civil case, the jury
be for any cause discharged without finding a verdict, the
fees of the jury shall be paid by the plaintiff, . . . and
until they are paid no further proceedings shall be allowed
in the action.' This language is almost identical with the
provision of the section of the statute of 1917, already quoted
by us, and petitioner cites *Lukes* v. *Logan,* 66 Cal. 33, [4 Pac.
883], referred to and approved in *Fairchild* v. *King,* 102 Cal.
320, at page 323, [36 Pac. 649], and *Carpenter* v. *Jones,* 121
Cal. 362, [53 Pac. 842], construing the language of the early
statutes quoted, and squarely upholding refusals by trial

courts to proceed where fees of jurors have not been paid after nonsuit or disagreement. But counsel for petitioner fails to note the vital distinction between those cases and the case in interest here. In none of the earlier decisions was the question presented as to the rights of the parties in a cause *in forma pauperis*. Neither did the court in any of these cases consider the vital question of the right of a litigant in a civil case to have the benefit of a jury trial regardless of his financial inability to prepay the fees for such service.

"But the whole question of the rights of a litigant *in forma pauperis* so recently engaged the attention of the supreme court of this state in this very case (*Martin* v. *Superior Court, supra*), that we do not need to look elsewhere for authority on which to decide the question presented by the proceeding now before us. 'The fundamental question thus presented,' says the court in its opinion, 'is of the right of the petitioner (Martin) to proceed with the prosecution of his action in the superior court *in forma pauperis*, and therefore without the payment in advance of the legal fees.' The court points out that this privilege, so far as regards the exemption from court fees, was conceded to litigants at common law, and holds that the power to grant such exemption, in proper cases, now exists in our courts of general jurisdiction without the declaration of express statute.

"Continuing, the court says: 'With the power in our superior courts thus declared, to admit suitors to commence or having commenced to prosecute their actions *in forma pauperis* in all proper cases, the next consideration is whether or not the legislature has by its enactments designed to curtail that power. Quite aside from the question as to the power of the legislature to do this thing, it is obvious that only the plainest declaration of legislative intent would be construed as even an effort to do this thing. We find no such expressed intent. All of the statutes dealing with the payment and prepayment of fees, such as section 4295 of the Political Code, are general in their nature and have to do with the orderly collection and disposition of the fees, payment or prepayment of which is prescribed by law. Neither individually nor collectively are they even susceptible of the construction that the design of the legislature was to deny to the courts the exercise of their most just and most necessary inherent power. They have applicability to all cases where

the court has not, in the exercise of that power, remitted the payment of the fees on behalf of a poor suitor, and in every instance the court's order to this effect is sufficient warrant to every officer charged with the collection of fees to omit the performance of that duty in the specified case.'

"Petitioner seeks to render the decision of the supreme court inapplicable by his assertion that in the opinion the aforementioned section 17 of the Statute of 1917 (*supra*) was not referred to, and, so far as the language of the court discloses, was not considered. However, the earlier statutes, containing language so similar as to be almost identical, were before the court and were referred to in the opinion. Furthermore, the Statute of 1917 had been passed and was in effect previous to the rendition of the decision, and the decision and the statute must be considered together.

"We fail to see a distinction between the status of a litigant *in forma pauperis* before a trial by a jury, and the same litigant after a partial trial, and discharge of the jury without finding a verdict. The act of 1917 refers to and regulates only the payment of fees where they can be and are paid by litigants. It nowhere refers to or relates to actions *in forma pauperis*. It is silent on the subject. We can see in it no declaration of legislative intent to curtail the inherent power of the superior court to admit suitors to commence, or having commenced, to prosecute their actions *in forma pauperis* in proper cases."

Subsequently, the matter was transferred to this court in order that we might further examine the petitioner's contentions that in view of the peremptory provision whereby the clerk of the superior court was commanded to collect all jury fees each day in advance, the language requiring settlement of unpaid fees as a prerequisite to further proceedings could apply only to persons prosecuting actions *in forma pauperis* and that the language quoted by Mr. Justice Waste from the statute of 1868, although reproduced in substance in the act of 1917, could apply in the latter statute only to fees earned by jurors in criminal cases. Petitioner calls our attention to the facts that juries in criminal cases are paid by the counties in which the trials take place; that in ordinary civil actions fees must be paid each day in advance; and that the only causes in which jurors remain uncompensated when for any reason they are discharged are actions in which the

trial is conducted under an order *in forma pauperis*. He argues, therefore, that there is no case in which the provision of the statute of 1917 that until the jury fees are paid "no further proceedings shall be allowed in the action" could possibly operate or be at all applicable excepting in a civil action proceeding *in forma pauperis*. He, therefore, insists that the statute of 1917 unequivocally applies to the trial of *Martin* v. *Majors* and that the jury having been discharged without finding a verdict, "no further proceedings shall be allowed in the action" until the jurors are paid.

To this argument respondents answer that for many years the law had been in virtual accord with the quoted section of the act of 1917, yet this court in *Martin* v. *Superior Court* announced no exception to the rule that in all stages of a trial a poor suitor shall have all of the benefits of uncompensated service from jurors and court officers.

There was no substantial change in the statutes amendatory of the act of 1868 with reference to the compensation of jurors until the statute of 1917 was adopted. (Stats. 1869–70, pp. 148–176; Stats. 1871–72, p. 188.) Section 631, subdivision 5, of the Code of Civil Procedure provides that a trial by jury may be waived in certain actions by the several parties to an issue of fact, "By failing, at the beginning of each day's session, to deposit with the clerk the jury fees and, . . . mileage for such day"; but this subdivision (adopted in 1915) throws no light upon the problem presented to the court in the matter at bar. Petitioner declares that there is a wide and fundamental difference between the fee bill of 1868 and its early successors and that of 1917. In the act last framed, while there is a provision for payment of jurors by the county, all of their compensation in civil cases must come from the daily prepayment of the proper fees. By the earlier acts the fees were payable, in civil cases, by the prevailing party, before the entry of the verdict. There was also the provision that if the sum received by each juror should be found at the end of the term to be less than the legal per diem and mileage, the difference should be paid by the county.

But it is argued by respondents, that, inasmuch as actions prosecuted *in forma pauperis* were not specified in terms by the statute, and because the legislature was dealing with the general practice in jury cases, the lawmakers only had in

mind the situation which might arise in a suit or proceeding in which solvent litigants might be engaged. Respondents, in short, contend that the apparent restricted meaning of the requirement for payment of fees prior to further proceedings after discharge without verdict of a jury, arises from unintentional inclusion in a statute adopting a new rule for prepayment of fees in ordinary cases of language which had been applicable to all litigants when used in earlier enactments. It is also asserted on behalf of respondents that in giving to the fee bill the interpretation suggested by petitioner this court would be going contrary to the spirit, if not the letter, of the decision in *Martin* v. *Superior Court.* With reference to the point last stated we agree with respondents that a very liberal view of the rights of poor litigants was adopted by this court in the Martin case. There it was decided that only the plainest declarations of legislative intent would be construed as an effort to curtail the authority of courts given by the common law to admit litigants to sue *in forma pauperis.* In view of the language of the opinion in *Martin* v. *Superior Court* and of an examination of the various fee bills themselves we are constrained to agree with respondents.

Since the submission of the cause it has been suggested by a member of the court that perhaps the legislators who enacted the statute of 1917 might have had in mind the fact that at common law a vexatious suitor *in forma pauperis* or one who unnecessarily delayed or otherwise damaged his adversary might be dispaupered and prevented from having further benefit of uncompensated service of jurors. This leads to an inquiry whether or not it is reasonable to suppose that the new matter in the act of 1917 was an attempt automatically and without the intervention of a court to dispauperize anyone who had failed of a verdict from the jury first drawn. Such a result might follow the enforcement of the letter of the law of 1917.

Common-law courts, it is true, were jealous of extending the privilege of suing in this form. In Lilly's Practical Register (edition of 1735), page 851, we are informed that Rolle, Chief Justice, said "that he did not use to admit anyone generally to sue *in Forma Pauperis,* that is, to sue in all Causes, but only to sue so in one Cause by Virtue of that Admittance, 1654. B. S. So that if he had other Cause to shew, he must

petition again to be admitted to sue *in Forma Pauperis, & sic toties quoties.''* The same author in the same article uses the following language: ''If one that is admitted to sue *in Forma Pauperis,* will not proceed according to the Rules of the Court, but useth Delays to vex his Adversary, the Court will dispauper him. (Mich. 22 Car. B. R.) For the Law doth not favour the Poor to do Injury to others, but to help them to recover their Right, where they want Ability of themselves to do it.''

There was a rule also that if a pauper gave notice of trial and did not proceed, he should be dispaupered. A note of this rule is found in 91 Eng. Rep., Full Reprint, 433.

However, the rule seems to have been enforced, generally speaking, only upon some showing of vexatious conduct on the part of the pauper. In *Blood* v. *Lee,* reported in volume 95, Eng. Rep., Full Reprint, at page 912, we find the following interesting matter:

''Wilmot, C. J., cited, from his own manuscript notes, the following cases relating to paupers and costs: *Winter* v. *Slow,* Mich. 4 Geo. II, B. R., was trover by a pauper; at the trial, the plaintiff proved a demand and refusal at the time of serving the writ, which being after the commencement of the action, he became nonsuited; and having brought a second action for the same thing, it was moved that he might pay the costs of the nonsuit in the former action, before he proceeded in the second action; but the Court refused to grant the motion, because they thought the plaintiff had not been vexatious. In *Taylor* v. *Lowe,* Trin. 7 & 8 Geo. II, B. R., the plaintiff being a pauper, and having given five or six notices of trial and thereby vexed the defendant, it was moved that he might pay costs of former notices, or be restrained from proceeding to trial; but while the admission to sue *in forma pauperis* stood they would make no rule about costs, but made a rule to shew cause why he should not be dispaupered, which was made absolute upon an affidavit of service thereof.''

In Hullock's ''Law of Costs'' (edition of 1796), 213, a case is cited where a single nonsuit made costs at once due, and it was ruled that the pauper might not thereafter proceed without paying costs, or showing, according to the act of parliament, that he was whipped. The same learned author, at the same page, cites *Winter* v. *Slow, supra,* where it appeared

that the nonsuit was not upon the merits, but occasioned by
a mistake of plaintiff's attorney and, therefore, in the court's
opinion not vexatious. In *Noaks* v. *Watts,* 93 Eng. Rep., Full
Reprint, 609, it was decided that a pauper shall not pay costs
for not going on to trial, as other plaintiffs do; but if the costs
are taxed the court would prevent his being vexatious by
obliging him to pay them before going to trial.

It was declared in *Doe dem. Leppingwell* v. *Weake,* 2
Smith's (John Prince) Reports, 676, that withdrawing the
record at the third day of the assizes, after giving notice of
trial, was vexatious conduct meriting dispaupering of the
plaintiff, but in that case it was decided that defendants had
waived their right to complain.

In *Brittain* v. *Greenville,* 93 Eng. Rep., Full Reprint, 1072,
the court denied a motion to tax costs after a lessor admitted
*in forma pauperis* had a verdict against him. The purpose
was to ground a further motion to stay his proceedings in a
second ejectment. The decision seems to be grounded, in part
at least, upon the failure of the moving party to proceed in the
usual way to dispauper his adversary. It was held, however,
that plaintiff's conduct was not vexatious.

In *Doe dem. Leppingwell* v. *Trussell,* 6 East, 504 (probably
a companion to *Doe dem. Leppingwell* v. *Weake, supra*), it
was found that the plaintiff suing *in forma pauperis* had
caused much delay by twice setting the case for trial and
afterwards countermanding the notice, in one instance, before
the term, and in the other withdrawing the record on the
third day of the assizes. The defendant had incurred above
one hundred pounds costs in procuring evidence and his at-
torney swore that he believed the merits to be in favor of the
defendant. The reporter describes the proceedings and their
result as follows: "To shew that the proper course was to
move that the party should be dispaupered in case of vexa-
tious delay, 2 Salk. 506; *Taylor* v. *Lowe,* 2 Stra. 903; *Brittain*
v. *Greenville,* 2 Stra. 1122, and 2 Tidd's Practice, 893, were
cited. It was contended that the lessor of the plaintiff ought
at least to have countermanded his notice, and thereby saved
a great part of the expense which the defendant had sus-
tained.

"On this day Lawes shewed cause upon an affidavit, which
stated, that the lessor of the plaintiff having about thirty
copies of registers to procure, and several witnesses to col-

lect, among whom was an old and infirm man, was unable to get to the assizes in time, and therefore was under the necessity of withdrawing the record.

"The Court, however, made the rule absolute for dispaupering the lessor of the plaintiff, but discharged it as to the payment of costs."

Under the heading *"Forma Pauperis"* in 1 General Index to the English Common Law Reports (Biddle and McMurtrie Edition of 1882), at page 373, we find the two following notes: "Amendment without costs not demandable of right. *Foster* v. *Bank,* li, 878; 6 Q. B. 878.   Withdrawing record to amend must pay costs of the day.   *Thompson* v. *Hornby,* lviii, 977; 9 Q. B. 978."

In *Weston* v. *Withers,* 2 Durnf. & E. 511, it was held that after nonsuit in trespass the court will stay proceedings in a second action between the same parties for the same cause until payment of the costs of nonsuit, notwithstanding the fact that the plaintiff suing *in forma pauperis* was a prisoner at the time of bringing the second action.

It will be at once evident from the above citations, that the common-law courts were not very ready to extend the privileges of a second trial to one suing *in forma pauperis* if there were circumstances indicating vexatious conduct.   It will be also apparent that no very definite nor fixed rule was followed.   But even the practice at the common law did not in general dispauperize one who merely failed to obtain a verdict, or who by the action of his counsel in securing a postponement of the cause for correction of pleadings permitted a jury to be discharged before submission of the issues of fact. [1]   We cannot justly decide, therefore, that a rule analogous to that for dispaupering litigants at common law was intended by the legislature of 1917.

Besides, there could be no good reason for requiring a plaintiff excused from paying jury fees at the first trial to pay on a second trial the fees from which he was so excused. Some reason might exist for failing to extend the privilege to a second trial without fees, but that would be accomplished *not* by forcing him to pay the charges from which he had been exempted, but by exacting the usual charges for the second trial.

[2]   The question whether one once admitted to sue *in forma pauperis* should, on account of vexatious conduct, delay, etc., be prevented from having further benefit of un-

compensated service, is one for the court having jurisdiction in the case or proceeding to determine in the exercise of a wise discretion. Its discretion here, as in the case of one originally seeking to be admitted to sue *in forma pauperis*, should be exercised with a view to confine the privilege most strictly to those who, having a substantial right to enforce or preserve, are absolutely unable otherwise to so do, and who, once having been admitted to proceed *in forma pauperis*, diligently pursue a course free from unreasonable delay or vexatious conduct of any kind.

[3] In conclusion, we wish most emphatically to declare our conviction that such discretion should be used with the utmost care, to the end that unworthy persons who are neither indigent nor possessed of substantial rights may not enjoy this privilege.

Petition denied. Alternative writ discharged.

Angellotti, C. J., Lennon, J., Wilbur, J., Olney, J., and Lawlor, J., concurred.