[Sac. No. 7972. In Bank. July 2, 1974.]

SALLY LEE CONOVER et al., Plaintiffs and Respondents, v.
JAMES M. HALL, as Secretary, etc., et al., Defendants and Appellants.

**COUNSEL**

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, and N. Eugene Hill, Deputy Attorney General, for Defendants and Appellants.

Daniel S. Brunner, Valerie Vanaman, Clifford Sweet, F. Hayden Curry, Philip Goar and Ralph Santiago Abascal for Plaintiffs and Respondents.

**OPINION**

**TOBRINER, J.**—Once again we are called upon to determine the validity of a state welfare provision enacted as part of the Welfare Reform Act of 1971.[1] In this case we examine section 11451.6 of the Welfare and Institutions Code, which establishes a standard $50 per month work-expense allowance for all expenses other than child care expenses, regardless of a recipient's actual employment-related expenses.[2]

Plaintiffs, recipients of aid to families with dependent children (AFDC) whose monthly work-related expenses regularly exceed $50, initiated this action on their own behalf and on behalf of similarly situated individuals,

---

[1]See *Villa* v. *Hall* (1971) 6 Cal.3d 227 [98 Cal.Rptr. 460, 490 P.2d 1148], vacated 406 U.S. 965 [32 L.Ed.2d 664, 92 S.Ct. 2407], subs. opn. 7 Cal.3d 926 [103 Cal. Rptr. 863, 500 P.2d 887]. See also *California Welfare Rights Organization* v. *Brian* (1974) 11 Cal.3d 237 [113 Cal.Rptr. 154, 520 P.2d 970].

[2]Section 11451.6 currently provides in full: "Notwithstanding Section 11008, any exemptions from earned income for work-related expenses authorized under other provisions of this chapter shall be limited to a standard allowance of fifty dollars ($50) per month plus reasonable and necessary costs for child care for children during such times that the Superintendent of Public Instruction advises the welfare director of the county that he is unable to provide child care for each child eligible for services under Division 12.5 (commencing with Section 16700) of the Education Code. For purposes of this section, reasonable and necessary costs of child care are defined as actual costs, not to exceed the costs of securing child care available in the community which meets the minimum standards of the Federal Interagency Day Care Agreement of Section 107 of Public Law 90-222 (Economic Opportunity Amendments of 1967).

"To the maximum extent possible, child care shall be provided as a service cost pursuant to Division 12.5 (commencing with Section 16700) of Part 3 of the Education Code."

Unless otherwise indicated, all section references are to the Welfare and Institutions Code.

challenging the fixed $50 standard deduction as incompatible with the provisions of the controlling federal statute and seeking declaratory and injunctive relief. After a hearing, the superior court issued a preliminary injunction, restraining defendant state officials from implementing the challenged provision "insofar as said action would result in the imposition of a $50 maximum allowance on work related expenses exclusive of child care."[3] Defendants appeal from the trial court's order, contending that the court erred both in finding the state provision incompatible with federal law and in issuing a preliminary injunction without requiring plaintiffs to post an adequate undertaking.

For the reasons discussed below, we conclude that the preliminary injunction was properly issued. Under the governing federal statute, in determining a welfare recipient's "nonexempt income" for purposes of calculating his AFDC grant, a state must take into consideration "any expenses reasonably attributable to the earning of any such income. . . ." (Social Security Act § 402(a)(7), 42 U.S.C. § 602(a)(7).) The inflexible $50 standard work-expense deduction established by section 11451.6 conflicts with this federal directive insofar as it precludes those recipients whose actual work-related expenses exceed the $50 figure from the benefit of the inclusion of such additional expenses in the computation of their grants. As we shall explain, a very recent decision of the United States Supreme Court, decided on April 23 of this year, found a virtually identical Colorado welfare provision incompatible with the governing federal statute. (*Shea* v. *Vialpando* (1974) 416 U.S. 251 [40 L.Ed.2d 120, 94 S.Ct. 1746].) That decision definitively establishes the propriety of the trial court's initial ruling.

We shall also explain that the trial court did not lack jurisdiction either to restrain the implementation of the challenged provision or to relieve plaintiffs of the impossible burden of posting an undertaking to secure the state's potential damages. ▇▇▇ As a series of Court of Appeal decisions

---

[3]The preliminary injunction provides in relevant part:

"IT IS HEREBY ORDERED that during the pendency of this action, in order to maintain the status quo, the defendants, and each of them, and their officers, agents, employees, representatives and all persons acting in concert or participating with them, shall be and they are hereby restrained and enjoined from: Taking any action enforcing § 28.1 of the Welfare Reform Act of 1971, Cal. Stats., Ch. 578, or any regulations promulgated pursuant thereto or both, insofar as said action would result in the imposition of a $50.00 maximum allowance on work related expenses exclusive of child care.

"IT IS FURTHER ORDERED that the Preliminary Injunction shall issue without plaintiffs being required to file a bond."

has firmly established, California courts retain common law authority to waive such bond requirements at the behest of poor litigants.

1. *The standard work-expense deduction established by section 11451.6 of the Welfare and Institutions Code is incompatible with governing federal law.*

A brief review of the statutory framework governing the AFDC program will help place the challenged provision in proper perspective. As we have explained in earlier cases, the federal Social Security Act (42 U.S.C. § 601 et seq.) "makes federal funds available to those states which have submitted and had approved by the Department of Health, Education and Welfare ('HEW') a plan for aid and services to needy families with children. ■ Although the AFDC program is elective, once a state chooses to join, its plan must comply with the mandatory requirements established by the Act . . . ." (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 738-739 [97 Cal.Rptr. 385, 488 P.2d 953].)

California has adopted a "flat grant" system for determining the actual payments to be made to AFDC recipients. Section 11450 of the Welfare and Institutions Code establishes a schedule of "maximum aid" payments, with maximum payments varying according to the number of eligible needy persons in the same home. The amount of a recipient's actual aid payment is computed by substracting from the appropriate maximum aid figure all nonexempt income of the aid recipient. (See *Villa* v. *Hall* (1971) 6 Cal.3d 227 [98 Cal.Rptr. 460, 490 P.2d 1148], vacated 406 U.S. 965 [32 L.Ed.2d 664, 92 S.Ct. 2407], subs. opn. 7 Cal.3d 926 [103 Cal.Rptr. 863, 500 P.2d 887].)

In determining the amount of nonexempt income of a recipient to be subtracted from the maximum figure, federal law requires that the state consider not only the recipient's gross income but also the off-setting expenses which a recipient incurs in earning that income.[4] In particular, the specific federal requirement at issue in this case provides that "the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid . . . *as well as any expenses reasonably attributable to the earning of any such income.*" (Italics added.) (Social Security Act, § 402(a)(7), 42 U.S.C. § 602(a)(7).)

---

[4]Federal law also contains an "income disregard" provision, under which a designated portion of a recipient's income is exempted from consideration in calculating his welfare payments. (See 42 U.S.C. § 602(a)(8).) This "income disregard" provision is not at issue here. (See *County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 738-740 [97 Cal.Rptr. 385, 488 P.2d 953].)

Prior to the enactment of the Welfare Reform Act of 1971, California AFDC recipients were permitted deductions for all of their actual work-related expenses subject only to a minor limitation for personal items such as clothes and lunches. (See *County of Alameda* v. *Carleson* (1971) 5 Cal. 3d 730, 748 & fn. 20 [97 Cal.Rptr. 385, 488 P.2d 953].) These work-related expenses included the cost of such items as transportation, special education and training, federal and state taxes, social security contributions, union dues, and disability and retirement payments. Under this prior system, the amount deducted in determining a recipient's nonexempt income depended upon the recipient's *actual* work-related expenses.

Section 11451.6, enacted in August 1971, abolished this system of individualized determination of work-related expenses and established in its stead a standard work-related expense allowance of $50 per month, exclusive of child care costs. Under this standard allowance, all AFDC recipients with earned income are granted a $50 work expense deduction regardless of their actual work-related expenses: those with under $50 in actual employment costs obtain a benefit, while those with more than $50 in expenses lose their previous offset from gross income for such additional expenses.[5]

The primary issue presented by this case is whether the adoption of such a standard work-related expense allowance is permissible under federal law.

While the present case was pending before this court, the United States Supreme Court granted certiorari in a case presenting an identical legal challenge to a Colorado welfare provision which, like the California statute at issue, established a standardized work-expense deduction for AFDC recipients. (*Vialpando* v. *Shea* (10th Cir. 1973) 475 F.2d 731, cert. granted, 414 U.S. 999 [38 L.Ed.2d 235, 94 S.Ct. 351].) On April 23, 1974, the high court handed down its opinion in the *Shea* case, invalidating the challenged state provision as incompatible with the controlling federal statute. (*Shea* v. *Vialpando* (1974) 416 U.S. 251 [40 L.Ed.2d 120, 94 S.Ct. 1746].)

---

[5]The literal terms of section 11451.6 are actually ambiguous as to whether the $50 figure was intended as a "maximum" limit on work-related expenses or a "standard" deduction available to all recipients regardless of actual expenses; as quoted above, the section provides that "any exemptions from earned income for work-related expenses . . . shall be *limited* to a *standard* allowance of fifty dollars ($50) per month." (Italics added.) Defendants, however, have consistently interpreted the provision as providing for an across-the-board standard deduction and, because we have concluded that even under such an interpretation the provision cannot properly limit deductions for such expenses to $50 per month, we assume that the provision was intended to implement a standardized deduction rather than simply impose a maximum limit. (Cf. *Williford* v. *Laupheimer* (E.D.Pa. 1969) 311 F.Supp. 720.)

The *Shea* court declared: "By its terms § 402(a)(7) [of the federal Social Security Act] requires the consideration of 'any' reasonable work expenses in determining eligibility for AFDC assistance. In light of the evolution of the statute and the normal meaning of the term 'any,' we read this language as a congressional directive that no limitation, apart from that of reasonableness, may be placed upon the recognition of expenses attributable to the earning of income. Accordingly, a fixed work expense allowance which does not permit deductions for expenses in excess of that standard is directly contrary to the language of the statute." (416 U.S. at p. 260 [40 L.Ed.2d at p. 129].)

The *Shea* court then explained that "[t]he literal import of § 402(a)(7) is confirmed by the statute's legislative history . . . [¶] Standardized treatment of employment-related expenses without provision for demonstrating actual and resasonable expenses in excess of that standard amount, such as Colorado has adopted, threatens to defeat the goal Congress sought to achieve in adopting the mandatory work expense recognition provisions of § 402(a)(7). By limiting employment expenses to $30 per month, the Colorado regulation results in a disincentive to seek or retain employment for all recipients whose reasonable work-related expenses exceed or would exceed that amount. Accordingly, the Colorado regulation conflicts with federal law and is therefore invalid." (416 U.S. at pp. 263-265 [40 L.Ed.2d at pp. 131-132].)

Inasmuch as the standardized work expense deduction established by section 11451.6 is legally indistinguishable from the Colorado provision at issue in *Shea,* section 11451.6 must also succumb to the governing federal legislation. Thus, the trial court properly concluded that section 11451.6 is invalid insofar as it imposes a $50 limit on an AFDC recipient's work-related expenses.

2. *The trial court did not exceed its jurisdiction or abuse its discretion in issuing a preliminary injunction without requiring an undertaking.*

Defendants additionally contend, however, that even if the superior court properly resolved the substantive issue of the validity of the challenged state welfare provision, as *Shea* demonstrates, the superior court still had no authority either to grant a preliminary injunction or to waive the statutory requirement of an undertaking. Defendants raise three separate objections to the trial court's action, but we conclude that none can withstand analysis.

First, defendants suggest that under the provisions of section 526, second subdivision 4, of the Code of Civil Procedure and section

3423, subdivision Fourth, of the Civil Code the trial court lacked jurisdiction to enjoin the administration of a duly enacted statute. These sections provide in relevant part that "[a]n injunction can not be granted . . . [t]o prevent the execution of a public statute by officers of the law for the public benefit." A host of cases interpreting these sections have made it clear, however, that their provisions do not apply to an unconstitutional or invalid statute or ordinance and that courts have full authority to enjoin the execution of such enactments. (See, e.g., *Bueneman* v. *City of Santa Barbara* (1937) 8 Cal.2d 405, 407 [65 P.2d 884, 109 A.L.R. 895]; *McKay Jewelers, Inc.* v. *Bowron* (1942) 19 Cal.2d 595, 599 [122 P.2d 543, 139 A.L.R. 1188].) Thus, since the trial court properly found the challenged statute invalid under federal law, it had jurisdiction to restrain its execution.

Second, defendants contend that the order granting a preliminary injunction is fatally flawed because the order contains no *explicit* finding that such injunction is necessary to prevent "irreparable injury" to the plaintiffs. (See Code Civ. Proc., § 526, first subd. 2.) ▇ Defendants, however, have cited neither statutory nor judicial authority which suggests that an explicit finding of irreparable harm is required to sustain a preliminary injunction. ▇ In requesting injunctive relief, plaintiff's complaint alleged that the execution of section 11451.6 would cause them irreparable injury and, in the absence of any contrary indication in the record, we must presume from the trial court's order granting the injunction that it found such irreparable injury to be imminent. (See, e.g., *Walling* v. *Kimball* (1941) 17 Cal.2d 364, 373 [110 P.2d 58].)

Finally, defendants contend that in granting plaintiffs' request for a preliminary injunction without requiring them to post a bond to cover defendants' potential damages, the trial court violated the requirements of section 529 of the Code of Civil Procedure. Section 529 provides in relevant part that "[o]n granting an injunction, the court or judge must require . . . a written undertaking on the part of the applicant . . . to the effect that he will pay to the party enjoined such damages, not exceeding an amount to be specified, as such party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled thereto." Defendants point to the mandatory language of this section and urge that the trial court lacked authority to waive this bond requirement.

▇ In a long series of cases commencing with *Martin* v. *Superior Court* (1917) 176 Cal. 289 [168 P. 135], our court has explained that, despite the apparent mandatory character of a variety of statutes calling for the

payment of litigation fees, California courts retain a common law authority to dispense with such fees in the case of poor litigants. (See, e.g., *Ferguson v. Keays* (1971) 4 Cal.3d 649 [94 Cal.Rptr. 398, 484 P.2d 70]; *Isrin v. Superior Court* (1965) 63 Cal.2d 153 [45 Cal.Rptr. 320, 403 P.2d 728]; *Majors v. Superior Court of Alameda Co.* (1919) 181 Cal. 270 [184 P. 18, 6 A.L.R. 1274].) ■ The instant case differs from these prior decisions in a significant respect, however, for the "injunction bond" required by section 529 is not simply a fee exacted by the state for the use of its court system, but instead is a form of security intended to protect an adversary party from potential injury. The initial question must, therefore, be whether, in appropriate circumstances, a trial court has authority to suspend such protection afforded by statute to litigating parties generally.

Although no California Supreme Court decision has yet passed on this issue, several Court of Appeal decisions have addressed the question and all have concluded that under proper circumstances California courts do have the power to dispense with bond requirements intended to protect an adversary's financial interest. In *County of Sutter v. Superior Court* (1966) 244 Cal.App.2d 770 [53 Cal.Rptr. 424], the seminal decision of this line of cases, the court followed the *Martin* decision's lead and examined the early English precedents to determine whether such authority existed at common law. After a thorough review of the historical material, the *County of Sutter* court concluded that "the common-law power embraced waiver of security for costs as well as suspension of fees." (244 Cal.App.2d at p. 774.) Accordingly, the Court of Appeal held that notwithstanding the language of Government Code section 947, a trial court did have authority to waive a bond requirement intended to secure the defendant county's costs of suit.

In *Bank of America v. Superior Court* (1967) 255 Cal.App.2d 575 [63 Cal.Rptr. 366], the court applied the reasoning of the *County of Sutter* decision to section 1030 of the Code of Civil Procedure, and held that the trial court properly waived the security for costs requirement embodied by that section. And in *Roberts v. Superior Court* (1968) 264 Cal.App.2d 235 [70 Cal.Rptr. 226], the court relied on the earlier *County of Sutter* and *Bank of America* decisions in permitting a poor litigant to file an appeal without obtaining an appeal bond required under section 985.5 of the Code of Civil Procedure.

■ ■ Defendants attempt to avoid the force of the *County of Sutter, Bank of America* and *Roberts* decisions by pointing out that each of the cases permitted the waiver of "cost bonds," whereas the trial court in the instant case dispensed with a "damage bond." We cannot discern

why this factual difference has any legal significance. The function of both "cost bonds" and "damage bonds" is to protect the monetary interests of adversary parties in litigation; if courts have authority to waive such security in the case of cost bonds, as the *County of Sutter, Bank of America* and *Roberts* cases hold, then logically courts retain a similar authority to dispense with the "damage bond" requirement at issue in this case.[6]

 Defendants finally attempt to distinguish the above authorities by noting that in the instant case plaintiffs have not proceeded in forma pauperis and have not filed affidavits establishing their indigence; defendants contend that under the *County of Sutter, Bank of America,* and *Roberts* decisions a formal in forma pauperis application is a necessary prerequisite to relieving any litigant of a statutory bond requirement. The cases, however, do not support defendants' contention that a formal in forma pauperis application is required before relief can be granted. In *County of Sutter v. Superior Court* (1966) 244 Cal.App.2d 770, 772 [53 Cal.Rptr. 424], the court observed: "[The plaintiff] did not in so many words seek—nor did the court grant—leave to proceed *in forma pauperis.* The order simply grants her leave to proceed without security for costs. Because it is grounded on her indigence, we view it by the same standards as an *in forma pauperis* order."

Although the superior court in the instant case apparently did not conduct any formal inquiry into the total assets of the plaintiffs, the court could reasonably conclude from the facts before it that plaintiffs were "poor" and could not afford to post an injunction bond to cover the state's potential damages. The pleadings establish, of course, that all plaintiffs are currently welfare recipients; although all have some earned income, none has a gross monthly income of more than $540. In view of these meagre resources, plaintiffs obviously could not afford to post the significant undertaking that would be necessary to cover the substantial costs resulting from the application of the preliminary injunction over the entire statewide welfare program.[7] On the facts of this case, we cannot say that

---

[6]Indeed, in one respect, the argument in favor of permitting a waiver of an "injunction bond" is even stronger than permitting waiver of a "cost bond," because in the "injunction bond" context a poor litigant who is relieved of an undertaking has already prevailed on the substantive issue before the trial court and thus there is less chance that the opposing party will be injured by the waiver of the bond requirement.

[7]When section 11451.6 was before the Legislature, a legislative analyst estimated that its enactment would save the state approximately $12 million annually. (Legislative Analyst, Analysis of Sen. Bill No. 796 (Aug. 9, 1971) p. 3.)

the trial court abused its common law discretion in permitting a preliminary injunction to issue without an undertaking. (See *Ferguson* v. *Keays* (1971) 4 Cal.3d 649, 658 & fn. 8 [94 Cal.Rptr. 398, 484 P.2d 70].)

In sum, we conclude that the trial court correctly determined that section 11451.6 of the Welfare and Institutions Code conflicts with the governing provisions of federal law insofar as that section places a $50 limit on work-related expenses. In addition, the trial court properly issued a preliminary injunction restraining the implementation of that provision.

The order is affirmed.

Wright, C. J., McComb, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

**CLARK, J.**—In view of the decision of the United States Supreme Court in *Shea* v. *Vialpando* (1974) 416 U.S. 251 [40 L.Ed.2d 120, 94 S.Ct. 1746], I must concur with the majority opinion.

Nonetheless, I believe the result obtained by this opinion, in striking the standard allowance for employment-related expenses incurred by working welfare recipients, is unfortunate.

The wisdom of such standardization goes beyond administrative convenience and savings. As revealed in a United States Department of Health, Education, and Welfare release reported in the Paso Robles Press on 21 December 1973, the national sub-sample of data from the quality control system of the states showed a national ineligibility rate of 10.2 percent, an overpayment rate of 22.8 percent, and an underpayment rate of 8.1 percent in cases in the AFDC program. Understandably the lack of standardization is a substantial cause of the administrative error component of these startling figures. The HEW release included the following recommendation for corrective action: "Initiation of flat grant (or partial flat grant) payments systems to eliminate detailed case-by-case payment computations. Twenty-three States are now using some form of flat grant."

In addition, the more individualized and variable a public program, the greater the likelihood that the sophisticated will receive an inequitably greater share of benefits than the uninformed. This is particularly true in the welfare field. Such standardization assures more equitable treatment with the result that more resources are available to redistribute to the needy.

The policy behind the $50 per month standard deduction from earned income plus reasonable and necessary costs of child care was an attempt to eliminate some of the loopholes which, when combined, allowed many persons with substantial income and resources to obtain aid intended only for the needy. Under the former regulations it was possible for a sophisticated welfare recipient to deduct hundreds of dollars in work-related expenses from gross income prior to determining eligibility for assistance. In addition to the standard deduction for food, clothing, and incidental personal expenses related to employment, these deductions could include car payments, automobile repairs, cleaning of clothing worn to work, transportation expenses (gas and oil), union dues, clothing necessary for a job (uniforms), child care payments, all involuntary payroll deductions, including federal income taxes, social security taxes, and in California, state disability deductions. (1 Assem.J. (Reg.Sess., 3 March 1971) p. 755; 4 Pacific L.J. 739, 755.)[1]

One of the basic goals of California's welfare reform program[2] was to seek a more equitable distribution of welfare moneys. (1 Assem.J. (Reg. Sess., 3 March 1971) p. 712.) While the vast majority of Californians sincerely desired to help those who through no fault of their own could not sufficiently help themselves, existing practices and policies had resulted in the most needy or uninformed recipients having their needs met the least. (See 4 Pacific L.J. at pp. 744-747.)

The subject of standardizing needs (Welf. & Inst. Code, §§ 11450, 11452), treatment of income (*Villa* v. *Hall* (1971) 6 Cal.3d 227 [98 Cal. Rptr. 460, 490 P.2d 1148], vacated 406 U.S. 965 [32 L.Ed.2d 664, 92 S.Ct. 2407], subsequent opn. 7 Cal.3d 926 [103 Cal.Rptr. 863, 500 P.2d

---

[1]Prior to the Welfare Reform Act, section 11008 of the Welfare and Institutions Code required that to "the maximum extent permitted by federal law, earned income of a recipient . . . shall not be considered income or resources of the recipient, and shall not be deducted from the amount of aid to which the recipient would otherwise be entitled." An example of this prior application is illustrated in the case of *County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 742 [97 Cal.Rptr. 385, 488 P.2d 953]. Section 20.5 of the Welfare Reform Act amended section 11008 to delete the requirement that earned income be disregarded "to the maximum extent permitted by federal law" and substituted a provision requiring that earned income be disregarded only to the extent required by federal law. Pursuant to this authority and pending disposition of this case, the department tightened the regulations pertaining to allowable work-related expenses so as to now allow the minimum required by federal law rather than the maximum.

[2]For a helpful discussion of the history of California's welfare reform program see Zumbrun, Momboisse & Findley, *Welfare Reform: California Meets The Challenge* (1973) 4 Pacific L.J. 739, relied on in this opinion. The authors are members of the Pacific Legal Foundation, a nonprofit public interest legal firm recently formed in Sacramento, California.

887]) and work-related expenses (Welf. & Inst. Code, § 11451.6) easily fit within the underlying considerations of the welfare reform program.

It is unfortunate we are unable to uphold this reasonable and equitable approach to meeting California's welfare needs.

Appellants' petition for a rehearing was denied July 31, 1974.