Filed 4/22/22 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| GERALD ARONOW,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>    Respondent;<br><br>EMERGENT, LLP et al.,<br><br>    Real Parties in Interest. | A162662<br><br>(San Francisco County<br>Super. Ct. No. CGC-19-579853)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the opinion filed March 28, 2022, be modified as follows:

1.    On page 24 of the opinion, following the paragraph continued from the previous page that ends with "Emergent's fears about waiving its right to arbitrate are unfounded," insert as footnote number 7 the following text:

> We agree with Aronow that the ability of a litigant's attorney to pay for arbitration costs is not relevant. (See *Isrin v. Superior Court* (1965) 63 Cal.2d 153, 165 [right to proceed in forma pauperis in appropriate cases may not be denied on ground that counsel for indigent litigant is representing litigant pursuant to a contingent fee contract].)

This modification does not change the judgment.

1

The petition for rehearing is denied.

_____
Streeter, Acting P.J.

*A162662 Aronow v. Superior Court*

2

Trial Court:        San Francisco County Superior Court

Trial Judge:        Hon. Ethan P. Schulman

Counsel:            Law Offices of Paul J. Steiner, Paul J. Steiner; Gary S.
                    Garfinkle, Maria J. Garfinkle, for Petitioner

                    No appearance for Respondent.

                    Murphy, Pearson, Bradley & Feeney, Harlan B. Watkins,
                    Geoffrey T. Macbride, for Real Parties in Interest

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| GERALD ARONOW,<br><br>      Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>      Respondent;<br><br>EMERGENT, LLP et al.,<br><br>      Real Parties in Interest. | A162662<br><br>(San Francisco County<br>Super. Ct. No. CGC-19-579853) |

We address a narrow issue, which the trial court certified for appellate resolution (Code Civ. Proc.,[1] § 166.1): Does a trial court that granted a defendant's petition to compel arbitration have jurisdiction to lift the stay of trial court proceedings where a plaintiff demonstrates financial inability to pay the anticipated arbitration costs? If so, may the court require defendant either to pay plaintiff's share of arbitration costs or to waive the right to arbitration? We answer both questions in the affirmative, and will issue a writ of mandate directing the trial court to allow Aronow to attempt to demonstrate his inability to pay the arbitrator's fees and, if necessary, to conduct an evidentiary hearing. If the trial court finds Aronow is unable to

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

1

pay the arbitrator's fee, it should give Emergent the choice either to pay Aronow's share of the arbitrator's fee or to waive the right to arbitrate.

## BACKGROUND

Aronow sued his former attorneys, Emergent LLP, Christopher Wimmer, and Peter Roldan (collectively, "Emergent," the real parties in interest) for legal malpractice. Emergent invoked the arbitration provision in the retainer agreement, which required that any dispute be resolved by "binding arbitration before a retired judge at ADR Services, Inc., in San Francisco, California, according to the rules of that organization." The agreement stated that Aronow "waiv[ed] [his] right to submit any dispute or any cause of action . . . to a jury or court trial. The parties shall bear their own legal fees and costs for all claims . . . ." Aronow opposed Emergent's section 1281.2 petition to compel arbitration, challenging the arbitration provision on various grounds, including unconscionability. On August 4, 2020, the trial court granted the petition after finding the agreement was valid; there was consideration for the fee agreement; the arbitration agreement was not unconscionable; and Emergent had not waived its right to arbitrate. [2]

Aronow and Emergent agreed on ADR Services, Inc. arbitrator Hon. Alfred Chiantelli (Ret.), whose hourly rate is $600; $3,600 for a half (up to

---

[2] In this proceeding, Aronow claims the trial court erred in concluding that the arbitration agreement is not unconscionable, and both parties extensively briefed that issue. The issue was not certified by the trial court. In any event, that claim is untimely in our court as the trial court rejected the argument in its August 4, 2020 order granting the petition to compel arbitration, and Aronow did not seek review of that decision until he filed the writ petition on May 19, 2021. (See *Volkswagen of America, Inc. v. Superior Court* (2001) 94 Cal.App.4th 695, 701 ["As a general rule, a writ petition should be filed within the 60-day period that is applicable to appeals."].) Therefore, we do not address the unconscionability issue.

four-hour) day; and $6,000 for a full (up to eight-hour) day. Aronow was required to make "a $1,500 advance payment" for the arbitrator's fee. ADR Services, Inc. agreed to apply its "consumer" waiver of its usual $450 administrative fee because Aronow was a consumer of legal services. At the initial conference with the arbitrator, Aronow advised that he was unable to pay the arbitration fees. The conference was adjourned and the arbitration did not proceed.

In the trial court, Aronow filed a motion for arbitration fees and costs waiver or alternatively to lift the court stay, which the trial court denied. Recognizing a split of authority, the court followed the appellate opinion that held a trial court does not have jurisdiction to lift a stay despite a plaintiff's claim that he cannot afford to pay arbitration fees. (See *MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 658–659 (*MKJA*).) The court also found Aronow had not documented "his share of the arbitration costs," "did not seek or obtain permission from this Court to proceed in forma pauperis," and "does not make a persuasive showing that he is unable to pay that estimated amount."

Aronow asked the court, pursuant to section 166.1,[3] to certify the question of whether a trial court that granted a defendant's petition to compel arbitration has jurisdiction to lift the stay of trial court proceedings

---

[3] Section 166.1 states: "Upon the written request of any party or his or her counsel, or at the judge's discretion, a judge may indicate in any interlocutory order a belief that there is a controlling question of law as to which there are substantial grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of the litigation." The statute is intended to " 'codify a judge's implicit authority to comment on an order,' " though it " 'does not change existing writ procedures or create a new level of appellate review.' " (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 869, fn. 6.)

where a plaintiff demonstrates financial inability to pay the anticipated arbitration costs. The court granted Aronow's request. In its order, the court acknowledged it found in its prior order that even if contrary authority, including *Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87 (*Roldan*) applied, Aronow "did not make a sufficient factual showing to support a finding that he is unable to pay his anticipated share of the cost of the arbitration. . . . However, the court notes that, based on the representations of counsel at the hearing, it has a reasonable basis to believe that [Aronow] may be able to fill those gaps in his evidentiary presentation. For example, [Aronow's] counsel pointed out that [Aronow] is currently receiving public assistance relief in the State of Alaska, and would not be eligible to receive such relief if he had any substantial assets."

Aronow then filed a petition for writ of mandate or other relief, which, in response to our request for a preliminary opposition, Emergent opposed. We issued an order to show cause to the respondent superior court, and these proceedings followed.

## DISCUSSION

### I.    Legal Background

*Trial court stays during arbitration*

A stay of trial court proceedings pending arbitration is governed by section 1281.4, which provides: "If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies. [¶] If an application has been made to a

4

court of competent jurisdiction, whether in this State or not, for an order to arbitrate a controversy which is an issue involved in an action or proceeding pending before a court of this State and such application is undetermined, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until the application for an order to arbitrate is determined and, if arbitration of such controversy is ordered, until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies."

" 'The purpose of the statutory stay [required pursuant to section 1281.4] is to protect the jurisdiction of the arbitrator by preserving the status quo until arbitration is resolved. [Citations.] [¶] In the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective.' " (*MKJA, supra,* 191 Cal.App.4th at p. 658.) " ' "Once a petition is granted and the lawsuit is stayed, 'the action at law sits in the twilight zone of abatement with the trial court retaining merely vestigial jurisdiction over matters submitted to arbitration.' [Citation.] During that time, under its 'vestigial' jurisdiction, a court may: appoint arbitrators if the method selected by the parties fails ([Code Civ. Proc.,] § 1281.6); grant a provisional remedy 'but only upon the ground that the award to which an applicant may be entitled may be rendered ineffectual without provisional relief' ([Code Civ. Proc.,] § 1281.8, subd. (b)); and confirm, correct or vacate the arbitration award ([Code Civ. Proc.,] § 1285). Absent an agreement to withdraw the controversy from arbitration, however, no other judicial act is authorized." ' " (*MJKA,* at pp. 658–659.)

5

*Split of Authority on consequence of a plaintiff's indigency*

As the trial court recognized, appellate courts disagree whether a trial court may lift a stay in response to a plaintiff's claimed inability to pay arbitration costs. The trial court followed *MKJA*, the authority it found to be "better-reasoned" (see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456 [trial courts must choose between conflicting decisions]), and concluded it did not have jurisdiction to grant Aronow relief.

In *MKJA*, franchisees sued the franchisor for fraudulently inducing them to enter into the relationship and failing to provide operational support pursuant to the agreement, which contained an arbitration provision. (*MKJA, supra,* 191 Cal.App.4th at pp. 648–649.) The franchisor filed a motion to stay pursuant to section 1281.4, which the trial court granted. (*MJKA,* at p. 649.) When the franchisees filed a motion to lift the stay because they could not afford arbitration costs, the trial court lifted the stay concluding that the "arbitration provisions were unconscionable and/or unenforceable." (*Id*. at p. 653.)

Division One of the Fourth District Court of Appeal reversed. The court interpreted section 1281.4 and "conclude[d] that a trial court may not lift a stay of litigation merely because a party cannot afford the costs associated with arbitration." (*MJKA, supra*, 191 Cal.4th at p. 660.) The court reasoned "the purpose of section 1281.4 is to protect the jurisdiction of the arbitrator by preserving the status quo until the arbitration is resolved," which is "essential to the enforceability of arbitration agreements generally." (*Id*. at pp. 660–661.) In its view, "[i]nterpreting section 1281.4 to broadly permit a trial court to allow litigation to proceed whenever the court determines that a party cannot afford the costs of arbitration . . . would be fundamentally inconsistent with [both] California's 'strong public policy favoring contractual

6

arbitration' [citation] [¶] . . . [and] well-established case law holding that a trial court retains only a very narrow scope of jurisdiction with respect to an action that has been stayed pending arbitration." (*Id.* at p. 661.)

Division Three of the Fourth District Court of Appeal twice considered the same issue, but reached the opposite conclusion. In the first case, *Roldan*, *supra,* 219 Cal.App.4th 87, a law firm sued by its former clients successfully invoked the arbitration provision of the retainer agreement. (*Id.* at p. 89.) The trial court granted the clients in forma pauperis status, but later denied their motion to compel the law firm to advance the arbitration costs. (*Id.* at pp. 92–93.) The Court of Appeal reversed and explained succinctly that the former clients could be excused from the obligation to pay arbitration fees because "to rule otherwise might effectively deprive them of access to any forum for resolution of their claims against [the law firm]. We will not do that." (*Id.* at pp. 95–96.) The court acknowledged it could not order the arbitration forum to waive its fees. So instead, the court remanded the matter for the trial court to "determine whether any of these plaintiffs are financially able to pay their pro rata share of [the arbitration] cost. If the court determines that any plaintiff is unable to do so, it must issue an order specifying that [defendant] has the option of either paying that plaintiff's share of the arbitration cost or waiving its right to arbitrate that plaintiff's case and allowing the case to proceed in court." (*Id.* at p. 96.) The court did not address either the trial court's jurisdiction under section 1281.4 or the contrary result in *MKJA*.

The same appellate court reached a similar result in *Weiler v. Marcus & Millichap Real Estate Investment Services, Inc.* (2018) 22 Cal.App.5th 970. In *Weiler*, the plaintiff sued an investment services company that represented her in property exchange transactions. On the company's motion, the trial

court ordered the matter to arbitration. (*Id.* at p. 974.) Several years later, the former client claimed she could not afford her half of the escalating costs of arbitration, so she brought a declaratory relief action seeking relief under *Roldan*. (*Weiler*, at pp. 975–976.) The trial court granted the company's summary judgment motion, but the appellate court reversed. (*Id.* at p. 976.) Following its decision in *Roldan*, the court explained that forcing the plaintiff "to remain in the arbitral forum with an obligation to pay half the fees will lead to 'the very real possibility [that she] might be deprived of a forum' to resolve her grievances against defendants." (*Weiler,* at p. 978, quoting *Roldan*, *supra,* 219 Cal.App.4th at p. 96.) "The interest in avoiding such an outcome far outweighs the interest, however strong, in respecting parties' agreements to arbitrate." (*Weiler*, at p. 979.) The court also believed its conclusion was consistent with both the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) because an arbitration can be deemed "had" under both laws if it is terminated due to a party's failure to pay arbitration fees, which would allow the court to lift a stay of court proceedings. (*Weiler*, at pp. 979–980, citing 9 U.S.C., § 3; and Code Civ. Proc., § 1281.4.) Once again, the court elided the contrary result in *MKJA*.

## II.    Analysis

### *Standard of review*

We review the issue presented here de novo as it requires us to interpret section 1281.4 to decide whether the trial court has jurisdiction to lift the stay. (See *Doe v. Brown* (2009) 177 Cal.App.4th 408, 417 ["We apply the de novo standard of review to this claim, since the claim raises an issue of statutory interpretation."]; *Cardiff Equities, Inc. v. Superior Court* (2008) 166 Cal.App.4th 1541, 1548 [applying de novo standard of review to "legal

8

question" of whether case was properly stayed pursuant to § 1281.4]; *MKJA, supra,* 191 Cal.App.4th at p. 657 [applying de novo review].)

### *Statutory text and history*

We begin by considering section 1281.4's language and structure. (*Gund v. County of Trinity* (2020) 10 Cal.5th 503, 511.) The California Arbitration Act "was enacted in 1927, and revised and reenacted in 1961" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 112 (*Armendariz*), abrogated in part on another ground in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339-340, 352) upon the recommendation of the California Law Revision Commission. Neither the statute nor the Law Revision Commission's recommendation addresses circumstances where, due to indigency, a party to a contract containing an arbitration provision is unable to bear the cost of the arbitrator's fee. (Stats. 1961, ch. 461, § 2, Assem. Bill No. 832, Recommendation and Study relating to Arbitration (Dec. 1960) 3 Cal. Law Revision Com. Rep. 1961.) The statute states only that upon ordering arbitration, a trial court must "stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies." (§ 1281.4.) We agree with the *MKJA* court's explanation that while we may assume, based on the statutory language, that a "trial court possesses some amount of discretion to lift a stay imposed pursuant to section 1281.4, prior to the completion of an ordered arbitration," the statute "does not address the scope of that discretion." (*MKJA, supra*, 191 Cal.App.4th at p. 660.) We therefore turn to other sources to determine whether a trial court may lift a stay under the circumstances presented here. (*Gund*, at p. 511.)

9

***Jameson v. Desta***

Confronted with *MKJA* and *Roldan,* the trial court found the former "the better-reasoned of the two approaches." However, it appears the parties did not advise the trial court that our Supreme Court had recently cited *Roldan* with approval and relied upon it in reaching its holding in *Jameson v. Desta* (2018) 5 Cal.5th 594, 605, 621–622 (*Jameson.*)[4]

Jameson, a prison inmate, sued a California Department of Corrections doctor in San Diego County for professional negligence. (*Jameson, supra,* 5 Cal.5th at p. 599.) Declared in forma pauperis, Jameson was entitled to both waiver of the filing fee and the attendance of an official court reporter. (*Id.* at p. 598, see Gov. Code, §§ 68086, subdivision (b), 68631.) In response to drastic budget reductions, the trial court's policy did not provide official court reporters at civil trials; a party had to hire a private reporter, and no provision was made for a litigant who, due to limited financial resources, was unable to engage a private reporter. (*Jameson,* at p. 598.) Jameson represented himself at the jury trial, which proceeded without a court reporter. (*Id.* at p. 601.) After opening statements, the trial court granted defendant's nonsuit motion (§ 581c) and motion to dismiss for failure to bring the action to trial within five years after commencement (§ 583.310) and entered judgment for defendant. (*Jameson,* at p. 601.) Jameson appealed. The Court of Appeal affirmed after concluding that "plaintiff is precluded from obtaining a reversal of the trial court's nonsuit ruling because the record on appeal does not contain a reporter's transcript." (*Id.* at p. 602.)

---

[4] Curiously, while Emergent devotes dozens of pages to its discussion of *Roldan,* it does not address *Jameson* in either its opposition to petition for writ of mandate (table of authorities at pp. 7–8) or in its return to petition for writ of mandate (table of authorities at pp. 9–10).

The Supreme Court reversed and held "as applied to in forma pauperis litigants who are entitled to a waiver of official court reporter fees, the San Diego Superior Court's general policy of not providing official court reporters in most civil trials while permitting privately retained court reporters for parties who can afford to pay for such reporters is inconsistent with the general teaching of prior California in forma pauperis judicial decisions and the public policy of facilitating equal access to the courts embodied in [Government Code] section 68630, subdivision (a)." (*Jameson, supra,* 5 Cal.5th at p. 599.) "By precluding an indigent litigant from obtaining the attendance of an official court reporter (to which the litigant would be entitled without payment of a fee), while at the same time preserving the right of financially able litigants to obtain an officially recognized pro tempore court reporter, the challenged court policy creates the type of restriction of meaningful access to the civil judicial process that the relevant California in forma pauperis precedents and legislative policy render impermissible." (*Ibid.*)

To reach this result, the court surveyed the decisions protecting indigent civil litigants, beginning with *Martin v. Superior Court* (1910) 176 Cal. 289 (*Martin*), where the court held that "under the common law California courts have the inherent power to permit an indigent person to litigate a civil case in forma pauperis and thereby to bring a civil action without paying the ordinary, statutorily required filing fees." (*Jameson, supra,* 5 Cal. 5th at pp. 603–604, citing *Martin,* at pp. 293–296.) The court explained: "Following the general principles set forth in *Martin,* this court and the Courts of Appeal have afforded indigent civil litigants the ability to obtain meaningful access to the judicial process in a great variety of

11

contexts." (*Jameson*, at p. 604.) The court listed 14 examples[5], including the right of an indigent civil litigant to obtain an injunction without providing an injunction bond (see *Conover, supra,* 11 Cal.3d 842); the right of an indigent civil litigant to obtain waiver of bond requirement imposed by former

[5] "(See, e.g., *Majors v. Superior Court of Alameda Co.* (1919) 181 Cal. 270 [right of civil indigent litigant to obtain jury on retrial without prepayment of jury fees]; *Isrin v. Superior Court* (1965) 63 Cal.2d 153 (*Isrin*) [indigent civil plaintiff could not be denied in forma pauperis status because represented by counsel on contingent fee basis]; *Ferguson v. Keays* (1971) 4 Cal.3d 649 . . . [right of indigent civil litigant to file appeal without payment of appeal fees]; *Earls v. Superior Court* (1971) 6 Cal.3d 109 (*Earls*) [indigent civil litigant may not be denied in forma pauperis status on the ground that litigant may be able to afford fees through savings over several months]; *Conover v. Hall* (1974) 11 Cal.3d 842 (*Conover*) [right of indigent civil litigant to obtain injunction without providing an injunction bond]; *Payne v. Superior Court* (1976) 17 Cal.3d 908 . . . [right of indigent prisoner who is a defendant in a civil case to be provided meaningful access to judicial process, including representation by counsel if necessary]; *Yarbrough v. Superior Court* (1985) 39 Cal.3d 197 [explaining trial court's responsibilities under *Payne*]; *County of Sutter v. Superior Court* (1966) 244 Cal.App.2d 770 (*County of Sutter*) [right of indigent civil litigant to obtain waiver of bond requirement imposed by [former Gov. Code,] § 947]; *Bank of America v. Superior Court* (1967) 255 Cal.App.2d 575 . . . [right of indigent out-of-state civil litigant to obtain waiver of security for costs required by Code Civ. Proc., § 1030]; *Roberts v. Superior Court* (1968) 264 Cal.App.2d 235 . . . [right of indigent civil litigant to obtain waiver of appeal bond required by Code Civ. Proc., former § 985.5]; *Cohen v. Board of Supervisors* (1971) 20 Cal.App.3d 236 . . . [right of indigent civil plaintiff who could not afford service by statutorily prescribed publication to utilize alternative reasonable method of service]; *Solorzano v. Superior Court* (1993) 18 Cal.App.4th 603 (*Solorzano*) [trial court abused its discretion in appointing a privately compensated discovery referee that indigent plaintiffs could not afford]; *Baltayan v. Estate of Getemyan* (2001) 90 Cal.App.4th 1427, 1436–1443(conc. opn. of Johnson, J.) (*Baltayan*) [right of indigent out-of-state civil plaintiff to exemption from security undertaking required by Code Civ. Proc., § 1030]; *Roldan*[, *supra,*] 219 Cal.App.4th 87 [trial court may not consign indigent plaintiffs to an arbitration process they cannot afford to pursue].)" (*Jameson, supra*, 5 Cal.5th at pp. 604–605.)

Government Code section 947 (see *County of Sutter, supra*, 244 Cal.App.2d 770; and the right of an indigent out-of-state civil plaintiff to exemption from security undertaking required by Code of Civil Procedure section 1030 (see *Baltayan, supra*, 90 Cal.App.4th 1427, 1436–1443 (conc. opn. of Johnson, J.)); see also *Jameson,* at pp. 604–605.)

Principal among the examples was *Roldan,* which the court observed was based on " 'California's long-standing public policy of ensuring that all litigants have access to the justice system for resolution of their grievances, without regard to their financial means.' " (*Jameson, supra*, 5 Cal.5th at p. 621, quoting *Roldan, supra*, 219 Cal.App.4th at p. 94.) The court described Roldan's plight as follows: "In *Roldan, supra*, 219 Cal.App.4th 87, a related question arose in the context of the enforcement of an arbitration provision contained in retainer agreements between the plaintiff clients and the defendant attorneys. Under the arbitration clause at issue and the applicable provisions of the California Arbitration Act (Code Civ. Proc., § 1284.2), each party to the arbitration agreement was required to pay a pro rata share of the arbitrator's fees and expenses as well as other arbitration expenses, all of which were likely to be substantial. The plaintiffs in *Roldan* were elderly individuals who had applied for and had been granted in forma pauperis status in the judicial proceeding. Thereafter, the plaintiffs challenged the trial court order compelling them to submit their dispute with their attorneys to arbitration, maintaining that they could not afford to pay the arbitration expenses.

"The Court of Appeal in *Roldan* first discussed several cases that had considered whether a provision of an arbitration agreement that required a party to pay arbitration fees that the party could not afford was unconscionable and unenforceable. (*Roldan*, at pp. 94–95 [describing

13

*Gutierrez v. Autowest, Inc.* (2013) 114 Cal.App.4th 77 and *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554].) The appellate court in *Roldan* thereafter concluded that it need not reach the issue of whether the arbitration agreements at issue in that case were unenforceable, because the only issue before it was whether plaintiffs, who had been granted permission to proceed in forma pauperis, 'could . . . be excused from the obligation to pay fees associated with arbitration.' (*Roldan*, at p. 95.) The court in *Roldan*, having taken note of 'California's long-standing public policy of ensuring that all litigants have access to the justice system for resolution of their grievances, without regard to their financial means' (*id*. at p. 94, citing *Martin*, *supra*, 176 Cal. 289), concluded that the plaintiffs were entitled to relief.

"The court in *Roldan* explained: 'If, as plaintiffs contend, they lack the means to share the cost of the arbitration, to rule otherwise might effectively deprive them of access to any forum for resolution of their claims against [the defendants]. We will not do that. Of course, as the trial court recognized, we cannot order the arbitration forum to *waive its fees*, as a court would do in the case of an indigent litigant. Nor do we have authority to order [the defendant law firm] to pay plaintiffs' share of those fees. What we can do, however, is give [the defendant law firm] a choice: if the trial court determines that any of these plaintiffs is unable to share in the cost of arbitration, [the firm] can elect to either pay that plaintiff's share of the arbitration cost and remain in arbitration or waive its right to arbitrate that plaintiff's claim.' (*Roldan*, *supra*, 219 Cal.App.4th at p. 96.)" (*Jameson, supra*, 5 Cal.5th at pp. 621–622.)

*Jameson* also relied on *Solorzano*, *supra*, 18 Cal.App.4th 603 where, as in *Roldan,* the appellate court relieved an indigent litigant of bearing the cost of a private neutral decision maker. *Solorzano* held a trial court's discretion

14

to appoint a privately compensated referee under sections 639 and 645.1 cannot be exercised in a manner that makes it unaffordable for an indigent party to litigate discovery disputes. The court explained: "Section 645.1 makes no provision for indigent litigants proceeding in forma pauperis. However, such parties are by definition unable to pay court-ordered reference fees regardless of how they are allocated. That is, no division or allocation of hourly fees for the services of a privately compensated discovery referee that imposes a monetary burden on impecunious litigants can achieve the fair and reasonable goal of section 645.1. Therefore, based on the present record, we conclude section 645.1 does not constitute authority for the trial court to appoint a privately compensated discovery referee to resolve the instant dispute." (*Solorzano*, at p. 615.)

That the court in *Solorzano* was exercising discretion in appointing the referee whereas the *Roldan* court was acting pursuant to a legislative directive did not lead the *Jameson* court to distinguish the two outcomes. "[T]hese cases demonstrate that the policy of affording indigent litigants meaningful access to the judicial process establishes restrictions not only upon potential barriers created by *legislatively* imposed fees or procedures, but also upon *court*-devised policies or practices that have the effect of denying to qualified indigent litigants the equal access to justice that the in forma pauperis doctrine was designed to provide. (See, e.g., *Isrin*, *supra*, 63 Cal.2d 153; *Earls*, *supra*, 6 Cal.3d 109; *Solorzano*, *supra*, 18 Cal.App.4th 603; *Roldan*, *supra*, 219 Cal.App.4th 87.)" (*Jameson*, *supra*, 5 Cal.5th at p. 606 (italics in original).) The court then emphasized the significance of *Roldan* and *Solorzano*: "The decisions in *Solorzano* and *Roldan* reveal a fundamental aspect of the California in forma pauperis doctrine that is directly relevant to the issue presented here. As these decisions demonstrate,

under California law when a litigant in a judicial proceeding has qualified for in forma pauperis status, a court may not consign the indigent litigant to a costly private alternative procedure that the litigant cannot afford and that effectively negates the purpose and benefit of in forma pauperis status. In other words, whatever a court's authority may be in general to outsource to privately compensated individuals or entities part or all of the court's judicial duties with respect to litigants who can pay for such private services, a court may not engage in such outsourcing in the case of in forma pauperis litigants when the practical effect is to deprive such litigants of the equal access to justice that in forma pauperis status was intended to afford." (*Jameson*, *supra*, 5 Cal.5th at p. 622.)

With the benefit of the Supreme Court's approval of *Roldan*'s rationale and result, we find it to be the better reasoned opinion and will follow its approach.

### *In forma pauperis status*

At the time the trial court certified this matter for writ review, it had not given Aronow permission to proceed in forma pauperis. After the matter was certified, both the trial court and our court allowed Aronow to proceed in forma pauperis. We need not analyze the timing of Aronow's in forma pauperis status because our Supreme Court concluded in *Conover, supra,* 11 Cal.3d 842, that in forma pauperis status is not required in the first instance for a litigant to seek relief from fees and costs that inhibit his right of access to the judicial process. In *Conover*, indigent plaintiffs who had not sought in forma pauperis status obtained a preliminary injunction against the enforcement of a state welfare provision without complying with section 529's mandatory injunction bond requirement. The court recognized that it was extending *Martin, supra,* 176 Cal. 289, because the bond "is not simply a

16

fee exacted by the state for the use of its court system, but instead is a form of security intended to protect an adversary party from potential injury. The initial question must, therefore, be whether, in appropriate circumstances, a trial court has authority to suspend such protection afforded by statue to litigating parties generally." (*Conover*, at p. 851.)

The Supreme Court affirmed the trial court's decision to waive the bond fees. (*Conover*, *supra*, 11 Cal.3d at p. 853.) It explained that "[i]n a long series of cases commencing with *Martin v. Superior Court* (1917) 176 Cal. 289, our court has explained that, despite the apparent mandatory character of a variety of statutes calling for the payment of litigation fees, California courts retain a common law authority to dispense with such fees in the case of poor litigants." (*Id.* at pp. 850–851.) Following this line of cases, the court held that "courts retain . . . authority to dispense with the " 'damage bond,' " which "function[s]" "to protect the monetary interests of adversary parties in litigation." (*Id.* at p. 852.) The court quickly dispatched the appellant's argument that in forma pauperis is required, noting that appellate court precedent does "not support defendants' contention that a formal in forma pauperis application is required before relief can be granted." (*Ibid.*)

### *Jurisdiction*

In its explicit approval of *Roldan* and the relief afforded the plaintiff there, the Supreme Court in *Jameson* recognized a trial court's jurisdiction on remand to determine if a plaintiff is unable to pay arbitration costs and, if so, to offer the defendant law firm two alternatives: " 'elect to either pay that plaintiff's share of the arbitration cost and remain in arbitration or waive its right to arbitrate that plaintiff's claim.' (*Roldan*, *supra*, 219 Cal.App.4th at p. 96.)" (*Jameson*, *supra*, 5 Cal.5th at pp. 621–622.)

17

In choosing to follow *Roldan's* approach, we are not unmindful of the authority on which *MKJA* relies, which the trial court adopted and which Emergent urges us to endorse. But we find more persuasive the Supreme Court's approval of the cases in which it and our sister courts have not allowed the absence of legislation or, occasionally, contrary statutes to bar indigent litigants from pursuing their constitutional rights. (Pp. 11–16, *ante*; *Jameson*, *supra*, 5 Cal.5th at pp. 605–606.) "Moreover, this line of cases also demonstrates that the exercise of judicial discretion in furtherance of facilitating equal access to justice is not limited to excusing the payment of fees that the government charges for government-provided services. Judicial authority to facilitate meaningful access to indigent litigants extends as well to excusing statutorily imposed expenses that are intended to protect third parties (e.g., injunction or damage bonds) and to devising alternative procedures (e.g., additional methods of service or meaningful access) so that indigent litigants are not, as a practical matter, denied their day in court." (*Jameson*, at p. 605.)

Unlike *Conover* and similar cases where relieving an indigent of the statutory obligation to post a bond could jeopardize the prevailing party's recovery, the *Roldan* remedy affords Emergent two alternatives, both of which protect the right to a fair, neutral tribunal to decide the case. Emergent can advance Aronow's share of the arbitrator's fee or, as it would absent the arbitration provision in the retainer agreement, try the case to a jury or court. We have no doubt that we strike the balance—between enforcing the language of the arbitration provision and Aronow's changed financial circumstances—consistent with the indigent litigant jurisprudence *Jameson* recounts.

***Other authorities cited by the trial court***

Unlike the trial court, we do not find anything in *Armendariz*, *supra*, 24 Cal.4th 83, or the Legislature's subsequent enactment of section 1284.3 to compel a contrary outcome. *Armendariz* held that an employee's California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) claims could be decided in arbitration, but "the arbitration must meet certain minimum requirements, including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration." (*Armendariz*, at p. 91.) The trial court did not find the arbitration provision of the retainer agreement to have been unconscionable at the time it was entered. But we cannot ignore that a party's financial circumstances can change between entry into an arbitration-provision contract and a dispute that requires resolution. Where a trial court finds an arbitration agreement's cost-sharing provision would effectively deprive a litigant of a forum for resolution, *Jameson* instructs that a judicial remedy is necessary. That the Legislature enacted section 1284.3—which addresses fees and costs in consumer arbitration for indigent consumers (see *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899)— does not preclude the need for a judicial remedy to ameliorate an unanticipated financial obstacle.

Nor is our application of the *Jameson* principles incompatible with section 1281.4, on which *MKJA* relies for a contrary result: " 'The purpose of the statutory stay [required pursuant to section 1281.4] is to protect the jurisdiction of the arbitrator by preserving the status quo until arbitration is resolved. [Citations.] [¶] In the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective.' " (*MKJA*, *supra*, at p. 658, quoting *Federal Ins. Co.*

19

*v. Superior Court* (1998) 60 Cal.App.4th 1370, 1374–1375.) Here, the arbitration has not commenced; the status quo is static. Failure to allow Emergent to pay Aronow's fee would render the "arbitration proceedings . . . ineffective." (*Ibid.*)

Nor is *Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482 apposite. In *Titan*, the trial court "reasserted jurisdiction" over a case in arbitration and ordered the arbitration to proceed under various conditions after the arbitration "never got off the ground" due to a number of factors, including the bankruptcy of certain defendants, various discovery disputes, and scheduling conflicts. (*Id.* at p. 485.) The appellate court held the trial court exceeded its jurisdiction by taking such action: "The trial court may not step into a case submitted to arbitration and tell the arbitrator what to do and when to do it: it may not resolve procedural questions, order discovery, determine the status of claims before the arbitrator or set the case for trial because of a party's alleged dilatory conduct. It is for the arbitrator, and not the court, to resolve such questions." (*Id.* at p. 489.) Here, by contrast, no party is contending we are removing the arbitrator's decision-making authority. Rather, without prepayment by Emergent, the arbitrator will never decide any issues. If, on remand, the trial court finds Aronow unable to pay the fees and Emergent elects to do so, the arbitration will proceed without further trial court intervention. Absent the trial court's resolution of the fee payment, no issues will be decided. And in that event, the arbitrator's jurisdiction is not "frustrated by the litigation"

20

(*MKJA*, *supra*, 191 Cal.App.4th at p. 660); it is facilitated by the trial court's intervention.[6]

### Procedure to determine financial ability to pay arbitrator's fees

The trial court expressed concern that adopting the *Roldan* analysis "threatens to open the courts to extensive, burdensome, and potentially unmanageable litigation." In its view, *Roldan* "mandates an ill-defined inquiry in each case into the financial ability of the contracting party to proceed with arbitration." The trial court invited us "to provide all trial courts with valuable guidance." As we explain, trial courts are well equipped to analyze a litigant's ability to pay arbitration fees.

We begin with guidance from our Supreme Court. In response to the argument that fee allocation should be decided at the conclusion of an arbitration, the Court in *Armendariz* recognized that "it is not only the costs imposed on the claimant but the *risk* that the claimant may have to bear substantial costs that deters the exercise of the constitutional right of due process." (*Armendariz*, *supra*, 24 Cal.4th at p. 110, italics in original.) "Because we conclude the imposition of substantial forum fees is contrary to public policy, and is therefore grounds for invalidating or revoking an arbitration agreement and denying a petition to compel arbitration under Code of Civil Procedure sections 1281 and 1281.2, we hold that the cost issues should be resolved not at the judicial review stage but when a court is petitioned to compel arbitration." (*Ibid.*)

We, too, conclude that the trial court should decide the issue of arbitrator fee payment and it should be resolved before commencement of the

---

[6] We do not address the situation in which a party claims an inability to pay arbitration fees and the other party seeks to have the ability-to-pay issue resolved in arbitration.

arbitration. We do not prescribe a singular procedure, but—in response to the trial court's request—suggest various alternatives, recognizing that the circumstances of a case will inform the trial court's decision how to proceed. That approach does not unduly burden the trial court and allows it to balance the parties' due process rights with the need for judicial economy.

As we observed, in forma pauperis status is not a prerequisite; however, the procedures for that determination provide a ready template should the trial court decide to employ it. (Gov. Code, § 68630 et seq.) In enacting the remedy for indigent litigants, the Legislature found "[t]hat our legal system cannot provide 'equal justice under law' unless all persons have access to the courts without regard to their economic means. California law and court procedures should ensure that court fees are not a barrier to court access for those with insufficient economic means to pay those fees." (Gov. Code, § 68630, subd. (a).) In response to a petition to compel arbitration, a litigant who claims financial inability to pay the arbitrator's fee could submit the Judicial Council application form and the financial statement prescribed by Government Code section 68633, subdivisions (c)(1) and (c)(2). "The court may delegate to the clerk the authority to grant applications for an initial fee waiver that meet the standards of eligibility and application requirements set forth in Sections 68632 and 68633." (Gov. Code, § 68634, subd. (d).) Where a party seeking relief from paying the arbitrator's fee is one of the persons enumerated in Government Code section 68632's list of persons "eligible to proceed without paying court fees and costs," the decision would be ministerial. Where the clerk is unable to grant the request, at the section 1281.2 hearing the judge can follow the fee waiver procedure and make the determination just as judges do where the clerk does not grant a fee waiver request. (Gov. Code, § 68634.5, subd. (e).) This approach minimizes the

22

judge's role, avoids the trial court's concern about "extensive, burdensome, and potentially unmanageable litigation," and responds to its request for guidance. It will allow the trial court to decide a litigant's ability to pay arbitration costs and achieve the Legislature's stated goal of assuring " 'equal justice under law' " (Gov. Code, § 68630, subd. (a)) for indigent litigants subject to an arbitration provision.

At oral argument, Emergent claimed the right to challenge in forma pauperis status and asserted the need to conduct discovery to pursue that objection. We recognize that interest and conclude, where appropriate, it can be accommodated by the trial court. Where a party to a contract with an arbitration provision opposes a motion to compel arbitration on the ground of inability to pay the costs, the moving party can ask leave to conduct limited discovery directed only to the opponent's financial circumstances. We do not share Emergent's concern that such limited discovery would waive its right to arbitrate. While taking advantage of judicial discovery procedures not available in arbitration is one of several factors for assessing whether a party has waived its right to arbitrate (see *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196), the discovery at issue in the cases finding waiver bears no resemblance to the discovery Emergent desires here. (E.g., *Oregel v. PacPizza, LLC* (2015) 237 Cal.App.4th 342, 356 [defendant produced "multiple deponents" who were questioned on class issues, and also deposed plaintiff and 25 putative class members]; *Bower v. Inter-Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1045 [defendant propounded classwide discovery that "was not de minimis, and was not propounded to preserve some right to seek discovery that would otherwise be lost"]; *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 18 [defendants propounded "a set of form interrogatories, a set of 236 special interrogatories, and a document

23

demand that resulted in the production of over 60,000 documents," and also deposed person with most knowledge about the complaint's allegations].) Emergent's efforts to obtain limited discovery about Aronow's finances will not implicate any of the other factors relating to waiver, such as acting inconsistently with the right to arbitrate or substantially invoking " ' the litigation machinery.' " (*St. Agnes Medical Center v. PacifiCare of California*, at p. 1196.) Because "waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof" (*id.* at p. 1195), Emergent's fears about waiving its right to arbitrate are unfounded.

At oral argument, both counsel argued that our tentative decision could be read to constrain the trial court's discretion. We now make clear that the court's earlier declaration of in forma pauperis is not dispositive, and Emergent may conduct the limited discovery into finances the trial court allows without fear of waiver of arbitration. Addressing Aronow's concern, we hold that the trial court has discretion to decide Aronow's ability to pay arbitration fees and can do so upon declarations with supporting exhibits or after conducting an evidentiary hearing.

### *Conclusion*

Supported by a wealth of jurisprudence, we conclude the trial court has jurisdiction to address Aronow's request and, if he demonstrates financial inability to pay the anticipated arbitration costs, to require Emergent either to pay Aronow's share of the arbitrator's fee or to waive the right to arbitration.

### DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its order refusing to lift the stay, to provide Aronow with an opportunity to demonstrate his inability to pay the arbitrator's fees and, if

24

necessary, to conduct an evidentiary hearing. If the trial court finds Aronow is unable to pay the arbitrator's fee, it should give Emergent the choice either to pay Aronow's share of the arbitrator's fee or to waive the right to arbitrate.

Aronow is entitled to his costs in this writ proceeding. (Rules of Court, rule 8.493(a)(1)(A).).

_____

Ross, J.[*]

WE CONCUR:


_____

Streeter, Acting P.J.


_____

Brown, J.

---

[*] Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:        San Francisco County Superior Court

Trial Judge:        Hon. Ethan P. Schulman

Counsel:            Law Offices of Paul J. Steiner, Paul J. Steiner; Gary S.
                    Garfinkle, Maria J. Garfinkle, for Petitioner

                    No appearance for Respondent.

                    Murphy, Pearson, Bradley & Feeney, Harlan B. Watkins,
                    Geoffrey T. Macbride, for Real Parties in Interest

*A162662 Aronow v. Superior Court*