Filed 7/11/23  Vacation Rental Owners and Neighbors of Rancho Mirage v. City of Rancho Mirage CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| VACATION RENTAL OWNERS AND NEIGHBORS OF RANCHO MIRAGE et al., | E077462 |
| Plaintiffs and Respondents, | (Super.Ct.No. CVRI2100368) |
| v. | OPINION |
| CITY OF RANCHO MIRAGE et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Russell L. Moore, Judge.

Affirmed.

Law Offices of Quintanilla & Associates, Michael R. Cobden, Steven B. Quintanilla, Colin D. Kirkpatrick; Colantuono, Highsmith & Whatley, Holly O. Whatley, and Alena Shamos, for Defendants and Appellants.

Slovak, Baron, Empey, Murphy & Pinkney, and Shaun M. Murphy for Plaintiffs and Respondents.

1

In December 2020, Ordinance No. 1174 (Ordinance 1174) became effective in the City of Rancho Mirage (the City). The ordinance prohibits short-term rentals in most residential neighborhoods in the City. In July 2021, the trial court modified a preliminary injunction to require the City to process certain residential property owners' applications for short-term rental certificates based on the law as it existed before Ordinance 1174. The City and its city council (collectively, the municipal defendants) appeal from the order modifying the preliminary injunction. We affirm the order.

BACKGROUND

A. *The City's Regulation of Short-Term Rentals*

In November 2020, the city council approved and adopted Ordinance 1174, which became effective the following month. Ordinance 1174 was added to Title 3 of the City's municipal code.

Ordinance 1174 prohibits short-term rentals in all public neighborhoods and in any common interest development imposing such a restriction. Public neighborhoods are defined as nongated neighborhoods not governed by conditions, covenants, and restrictions (CC&Rs) and in which residential parcels abut public streets. Common interest developments are defined as any development subject to the provisions of the Davis–Stirling Common Interest Development Act, Civil Code section 4000 et seq. and as defined in section 4100 of the Civil Code, "including without limitation homeowners associations, condominium owner associations and similar associations formed pursuant to the aforementioned Act." (Boldface and underlining omitted.) Civil Code section

2

4100 provides: "'Common interest development' means any of the following: [¶] (a) A community apartment project. [¶] (b) A condominium project. [¶] (c) A planned development. [¶] (d) A stock cooperative."

To rent an eligible property as a short-term rental, an owner must obtain a short-term rental certificate from the City. The certificate must be renewed annually. Any property owner who had a valid certificate when Ordinance 1174 became effective for a property that was made ineligible for short-term rentals by the new law would not be permitted to renew the certificate or to apply for a new certificate.

According to the recitals in Ordinance 1174, the city council adopted the new law because the city council found that even though short-term rentals provided the City with additional tax revenue, "there [were] various secondary negative effects associated with the use of residential dwellings as short-term rentals in residential neighborhoods." Staff members of the City had monitored the impacts that short-term rentals had on neighborhoods and had received complaints and feedback concerning short-term rentals. The City's staff recommended that the city council adopt a ban on short-term rentals as outlined in Ordinance 1174 "to preserve the public health, safety, welfare and character" in public neighborhoods and in common interest developments that had "determined that short-term rentals are not a permitted use of property."

B. *The Lawsuit*

In January 2021, Vacation Rental Owners and Neighbors of Rancho Mirage (Vacation Rental), Allicia Louisa Davis, Scott Shanstrom, Mary Pavlica, and RM

3

Vacation Rentals LLC (a vacation rental company in which Shanstrom was the sole member and manager) (collectively, petitioners) filed a verified petition for writ of mandate and a complaint for declaratory and injunctive relief (the petition) against the municipal defendants and the individual city council members. (The councilmembers have been dismissed from the lawsuit, so we do not discuss them further.) The petition contained 13 causes of action challenging the constitutionality and validity of Ordinance 1174, including that the municipal defendants violated the California Environmental Quality Act (CEQA) when enacting the ordinance.

Numerous exhibits were attached to the petition, including October and November 2020 reports from the City's staff to the city council about short-term rentals. The October 2020 report recommended prohibiting short-term rentals in "a public district." Several maps of various districts within the City were attached to the October 2020 report. The maps were not mentioned in the report, and the report did not describe what the maps depicted. In the November 2020 report, the City's staff recommended adopting Ordinance 1174 specifically. Two maps were attached to the November 2020 report: (1) a heat map depicting short-term rentals about which the City had received complaints, and (2) a district map. Those two maps are not included in the record on appeal.

C. *The Preliminary Injunction*

In February 2021, petitioners moved for a preliminary injunction to enjoin enforcement of Ordinance 1174 while the litigation was pending. Petitioners argued that

4

they were likely to succeed on the merits of many of their claims, including the CEQA claim, and would suffer irreparable harm without such an injunction.

Petitioners claimed that in analyzing whether applicants were eligible for short-term rental certificates under the new law, the City was using a map on their website that depicted districts in which short-term rentals were purportedly allowed or banned. Petitioners argued that the online short-term rental map differed from the maps attached to the October and November 2020 staff reports that purported to depict areas in which short-term rentals were banned. According to a supporting declaration from petitioners' attorney, several changes were made to the online map between December 11, 2020, and January 29, 2021. Areas that were previously designated as being within a common interest development that permitted short-term rentals were redesignated as areas that were not in common interest developments and in which short-term rentals were banned. Copies of the online maps from the different time periods were attached to the declaration.

Twenty seven individual members of Vacation Rental who owned short-term rental properties in the City filed declarations in support of the motion. Petitioners' attorney also filed a declaration in support of the motion. She summarized the data contained in the individuals' declarations and described how the new law had impacted them.

Mary Davis is one of the Vacation Rental members who filed a declaration in support of the motion. She and her husband were the sole managers and members of two

5

limited liability companies that owned three residential properties in the City that had been used as short-term rental properties. Mary D. attested that the properties were not located in gated communities and were not governed by homeowners' associations or CC&Rs.[1]

The municipal defendants opposed the motion, arguing that money damages provided petitioners adequate relief and that petitioners had failed to demonstrate that they were irreparably harmed by Ordinance 1174.

The court held three hearings on the motion. At one of the hearings, the municipal defendants' attorney conceded that the online short-term rental map was "not part of [Ordinance] 1174" and "not [the] law" but instead was "a map that [was] created by planners to assist the public in understanding at a quick glance what the city planners know already may be allowed or not allowed."

In April 2021, the court issued a preliminary injunction. It enjoined the City and any of its employees or agents "from any and all use of [the City's] so-called 'district maps' . . . in the course of processing, accepting, or denying any and all requests for short-term rental permits." The order applied to all short-term rental applications that were pending and to subsequent applications. The court reasoned that there was not substantial evidence demonstrating that such maps were approved by the city council or incorporated into the law, as Ordinance 1174 did not include any reference to a map. The court found that there was substantial evidence that properties otherwise eligible for

---

[1] We refer to Mary D. by her first name and the first initial of her last name because she has the same last name as petitioner Allicia Davis. No disrespect is intended.

short-term rental under the ordinance were located in districts on the maps that were designated as ineligible for short-term rentals. The court concluded "that without the intervention of injunctive relief, [short-term rental]-applicants who qualify under the explicit terms of the ordinance *but not the unenacted district maps* will continue to be unlawfully denied" short-term rental certificates "for the foreseeable future."

The court denied petitioners' request for a preliminary injunction insofar as it relied on facial challenges to Ordinance 1174. In that regard, the court found that CEQA did not provide any basis for the court to issue a preliminary injunction.

D. *The Anti-SLAPP Proceedings*

The day after the court issued the preliminary injunction, the municipal defendants moved to strike the entirety of petitioners' claims under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[2] (Unlabeled statutory references are to the Code of Civil Procedure.) In May 2021, the trial court denied the motion. The municipal defendants immediately appealed from that order. We address the anti-SLAPP appeal in a separate unpublished opinion. (See *Vacation Rental Owners and Neighbors of Rancho Mirage v. City of Rancho Mirage* (July 11, 2023, E077118) [nonpub. opn.].)

E. *The Modified Preliminary Injunction*

In June 2021, petitioners moved to modify the preliminary injunction to allow all 2020 short-term rental "permittees to lawfully rent their properties on a short-term basis for their properties that had valid [short-term rental] permits as of December 31, 2020,"

---

[2] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

and to "honor all 2020 [short-term rental] permits as if still valid until adjudication of this case."  Petitioners argued that the modification was necessary to maintain the status quo for them while litigation was pending because the City had continued denying individual petitioners' short-term rental certificate applications after the preliminary injunction issued.  In addition, several petitioners had already sold or were selling their short-term rental properties.  Several days before the motion was filed, the court dismissed petitioners Shanstrom, Pavlica, and RM Vacation Rentals LLC at their request.

In support of the motion to modify, petitioners submitted declarations from Shanstrom, Mary D., and three other individual members of Vacation Rental  The motion was also supported by a declaration from petitioners' attorney that had 23 exhibits attached.

Mary D. filed two declarations in support of the motion.  She stated that after reading the preliminary injunction she investigated whether two of the properties she owned through limited liability companies qualified for short-term rental certificates. She reviewed the preliminary title report for one property and the deed for the other.  She discovered that the properties were subject to CC&Rs and that the governing CC&Rs do not prohibit short-term rentals.  Mary D. stated when she had previously attested that her properties were not governed by CC&Rs she believed that information to be true.  Her belief was based in part on the City's online permit process that had informed her that the properties were not eligible under Ordinance 1174 for short-term rental certificates.

8

In light of the newly discovered information and the preliminary injunction, Mary D. applied for short-term rental certificates for the two properties. When she filed her declarations, one of the applications remained pending. The other was denied. Mary D. appealed that denial according to the instructions given to her in the email from the City informing her of the denial. The appeal was then denied because Mary D. had previously declared that the property was not governed by CC&Rs. According to the email informing Mary D. of the denial of her appeal, that denial could be appealed to the City's Planning Commission. Mary D. submitted an appeal to the Planning Commission. When Mary D. filed her declaration in support of the motion, she was unsure whether the appeal was still pending or whether the City rejected it for being incomplete.

The municipal defendants opposed modifying the preliminary injunction and filed objections to petitioners' evidence supporting the motion. The municipal defendants supported their opposition with a declaration from the City official who was primarily responsible for processing short-term rental certificate applications.

The trial court held several hearings on the motion to modify and issued two tentative rulings, which the court incorporated in its final ruling. The court did not expressly rule on the municipal defendants' evidentiary objections in any of the written rulings.

The trial court found that the following changed circumstances provided good cause to justify modifying the preliminary injunction: (1) Three petitioners had requested dismissal because they could no longer afford to maintain their residential properties

without being allowed to rent them on a short-term basis; (2) the municipal defendants' appeal from the denial of the anti-SLAPP motion would result in increased financial losses to petitioners because of the resulting litigation stay; (3) the City had imposed requirements on short-term rental certificate applicants that were not included in and were contrary to Ordinance 1174, causing applications to be wrongly denied; and (4) the administrative appellate process encountered by applicants also was not included in Ordinance 1174 or Title 3 of the City's municipal code. In addition, the court had reconsidered its position on the CEQA claim and believed that petitioners would likely succeed on the merits of that claim. In light of the changed circumstances demonstrating the financial hardship that petitioners were experiencing, the court concluded that "the balance of hardships favor[ed] the remaining petitioners" and thus warranted modifying the preliminary injunction to restore them "to the status quo as it existed prior to ordinance 1174's enactment."

The court ordered the City to process the short-term rental certificate applications of the remaining petitioners "with all deliberate speed" and no longer than 28 days from the issuance of the order. The court explained: Under the modified injunction, the petitioners would be allowed "to submit applications to the city for [short-term rental]-permits under the requirements in existence immediately before ordinance 1174's enactment. The city in turn must process the applications in compliance with its [short-term rental] ordinance as it existed prior to ordinance 1174. The same goes for the appellate process that was in existence prior to ordinance 1174." (Fn. omitted.) The

court clarified that petitioners could seek pre-Ordinance 1174 short-term rental permits only "for the specific residences for which they possessed permits prior to ordinance 1174." (Italics omitted.)

## DISCUSSION

The municipal defendants argue that the trial court erred by modifying the injunction. They claim that the trial court lacked jurisdiction to modify the injunction, and they also challenge the sufficiency of the evidence supporting the modification. We reject both arguments.

A. *Governing Law*

Courts retain the power to modify an injunction "at any point." (*In re Butler* (2018) 4 Cal.5th 728, 738 (*Butler*).) Under section 533, a court may modify an injunction upon a showing that (1) "there has been a material change in the facts upon which the injunction . . . was granted," (2) "the law upon which the injunction . . . was granted has changed," or (3) "the ends of justice would be served by the modification . . . ." The party seeking the modification bears the burden of demonstrating by a preponderance of the evidence that modification is warranted. (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1504.)

We reject the municipal defendants' argument that we independently review the trial court's decision to modify the preliminary injunction.[3] Our Supreme Court has held

---

[3] The municipal defendants contend that a less deferential standard of review is particularly appropriate because of contempt proceedings that occurred after the court modified the injunction. We address all of the municipal defendants' arguments concerning the subsequent proceedings in Discussion, part D, *post*.

11

to the contrary.  (*Butler*, *supra*, 4 Cal.5th at p. 738.)  We are bound by that precedent.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity*).)  We review for abuse of discretion the trial court's ruling on a motion to modify an injunctive order.  (*Butler*, at p. 738.)  "Under this standard, we consider the court's legal conclusions de novo, and assess its factual findings for substantial evidence."  (*Id.* at pp. 738-739.)  "We will not reverse the court's application of the law to the facts unless it is 'arbitrary and capricious.'"  (*Id.* at p. 739.)

When reviewing an order granting a preliminary injunction, we do "not resolve conflicts in the evidence, reweigh the evidence, or assess the credibility of witnesses."  (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1450 (*Whyte*).)  The trial court judges ""'"the credibility of the affidavits filed in support of the application for preliminary injunction and it is that court's province to resolve conflicts."'"  (*Ibid.*)  "Thus, even when presented by declaration, 'if the evidence on the application is in conflict, we must interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order.'"  (*Ibid.*)

B.  *The Trial Court Did Not Exceed Its Jurisdiction*

The municipal defendants contend that by modifying the preliminary injunction the trial court exceeded its jurisdiction in several ways.  We disagree.

1.  *Anti-SLAPP Stay of Litigation*

The municipal defendants argue that the trial court exceeded its jurisdiction by modifying the preliminary injunction in July 2021 because the litigation had been stayed

in May 2021 as a result of the municipal defendants' appeal from the denial of the anti-SLAPP motion. We disagree.

Section 916 stays "all further proceedings *on the merits* during the pendency of an appeal from the denial of an anti-SLAPP motion." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 194, italics added.) *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284 (*Novartis*) held that a trial court retains jurisdiction to grant injunctive relief during the pendency of an appeal from the denial of an anti-SLAPP motion because an "injunction is not a decision *on the merits* and does not effect the merits of the claim." (*Id.* at p. 1302, italics added.) We agree with *Novartis*'s reasoning. "'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that [it] should not be restrained from exercising the right claimed by [it].'" (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528 (*Continental Baking*); see also *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109 (*Gallo*).)

The municipal defendants argue that *Novartis*, *supra*, 143 Cal.App.4th 1284 is inapposite because the order modifying the preliminary injunction "went directly to the merits by ordering the ultimate relief that [petitioners] seek—issuance of [short-term rental certificates] without being required to comply with Ordinance 1174." This argument fails because it is contrary to Supreme Court precedent holding that granting a

13

preliminary injunction does not constitute an adjudication on the merits. (*Continental Baking*, *supra*, 68 Cal.2d at p. 528; *Gallo*, *supra*, 14 Cal.4th at p. 1109.) As the Supreme Court has explained, "an order granting or denying interlocutory relief reflects nothing more than the superior court's evaluation of the controversy on the record before it *at the time* of its ruling; it is not an adjudication of the ultimate merits of the dispute." (*Gallo*, at p. 1109.) The municipal defendants have not provided any reason why this legal principle and related precedent do not apply here. We cannot depart from Supreme Court precedent. (*Auto Equity*, *supra*, 57 Cal.2d at p. 455.)

Moreover, in modifying the preliminary injunction, the trial court did not grant petitioners the ultimate relief they requested—to *permanently* enjoin enforcement of Ordinance 1174. The court instead granted petitioners provisional relief effective only throughout the pendency of the litigation to preserve the status quo for petitioners. That is the very essence of the relief granted by a preliminary injunction. (*Continental Baking*, *supra*, 68 Cal.2d at p. 528.)

Because the trial court's modification of the preliminary injunction did not affect the merits of petitioners' claims, the trial court did not violate the litigation stay imposed under section 916 as a result of the municipal defendants' appeal from the order denying the anti-SLAPP motion.

2. *Section 526*

Section 526, subdivision (b)(4) (section 526(b)(4)), prohibits issuance of an injunction "[t]o prevent the execution of a public statute by officers of the law for the

public benefit." The prohibition does "not apply to an unconstitutional or invalid statute or ordinance," so "courts have full authority to enjoin the execution of such enactments." (*Conover v. Hall* (1974) 11 Cal.3d 842, 850 (*Conover*).)

The municipal defendants argue that the trial court violated section 526(b)(4) by modifying the preliminary injunction to enjoin enforcement of Ordinance 1174. They contend that the principle announced in *Conover* does not apply because the trial court has not made any "finding of invalidity or possible unconstitutionality" and instead has "repeatedly concluded [that Ordinance 1174] was lawful and valid." The argument is forfeited and lacks merit.

The municipal defendants did not make this argument in the trial court. In their opposition to the motion to modify, the municipal defendants cited section 526(b)(4) once in a footnote to support the proposition that when "a party seeks to enjoin 'public officers or agencies from performing their duties,' the petitioner's burden is higher." The municipal defendants did not argue that the trial court could not modify the injunction because of the prohibition in section 526(b)(4). The municipal defendants have forfeited the issue on appeal by failing to raise it in the trial court. (*Garcia v. Seacon Logix, Inc.* (2015) 238 Cal.App.4th 1476, 1489.)

In any event, the argument fails on the merits. The municipal defendants are mistaken about the findings made by the trial court. The trial court has never concluded that Ordinance 1174 "was lawful and valid." The court did deny petitioners' request for a preliminary injunction "to the extent it relie[d] upon facial challenges to ordinance 1174"

15

and found that petitioners were not likely to succeed on the merits of the CEQA claim. But in modifying the preliminary injunction, the trial court found upon reconsideration that petitioners were likely to succeed on the merits of the CEQA claim. Regardless, the trial court's rulings on the preliminary injunction did not finally adjudicate the merits of any of petitioners' claims. Rather, the rulings merely reflected the court's consideration of the probability that petitioners would prevail on the merits of their claims at trial. (*Continental Baking*, *supra*, 68 Cal.2d at p. 528; *Gallo*, *supra*, 14 Cal.4th at p. 1109.) The trial court has not yet reached a conclusion on the merits of the validity or constitutionality of Ordinance 1174. (Cf. *ArtMovers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 646 ["A permanent injunction is not issued to maintain the status quo but is a final judgment on the merits"].)

The municipal defendants are also mistaken about the scope of section 526(b)(4)'s prohibition. Section 526(b)(4) does not "preclude the issuance of preliminary injunctive relief when the constitutionality of a statute or ordinance is challenged," as is the case here. (*7978 Corporation v. Pitchess* (1974) 41 Cal.App.3d 42, 46; *Cohen v. Board of Supervisors* (1986) 178 Cal.App.3d 447, 453; *Sundance Saloon, Inc. v. City of San Diego* (1989) 213 Cal.App.3d 807, 812.)

The municipal defendants' reliance on *Conover* for a contrary conclusion is misplaced. The Supreme Court reasoned that section 526(b)(4)'s prohibition against issuing injunctions did not apply in that case "since the trial court properly found the challenged statute invalid under federal law." (*Conover*, *supra*, 11 Cal.3d at p. 850.)

16

*Conover* involved the validity of a provision of the Welfare Reform Act of 1971. (*Id.* at p. 845.) *Conover* involved an appeal from a preliminary injunction, but "a very recent decision of the United States Supreme Court . . . found a virtually identical Colorado welfare provision incompatible with the governing federal statute." (*Id.* at p. 846.) *Conover* reasoned that the new precedent "definitively establishe[d] the propriety of the trial court's initial ruling." (*Ibid.*) *Conover* therefore held that intervening precedent confirming the invalidity of the statute in question was *sufficient* to justify preliminary injunctive relief, but the case does not stand for the proposition that such authority is *necessary*. (*Id.* at p. 850.)

For these reasons, we conclude that the trial court did not violate section 526(b)(4) by modifying the preliminary injunction.

### 3. *Exhaustion of Administrative Remedies*

The municipal defendants argue that the trial court exceeded its jurisdiction under the exhaustion doctrine because Mary D.'s administrative appeal from the denial of her short-term rental certificate application was still pending. The argument lacks merit.

When "'an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.'" (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 321.) "Exhaustion of administrative remedies is 'a jurisdictional prerequisite to resort to the courts.'" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70, italics omitted.) The rule applies "to actions seeking injunctive relief [citations]." (*People v. Coit Ranch, Inc.*

17

(1962) 204 Cal.App.2d 52, 58.)  We independently review whether the exhaustion doctrine applies.  (*SJCBC LLC v. Horwedel* (2011) 201 Cal.App.4th 339, 345.)

The municipal defendants do not explain how the exhaustion doctrine applies under the circumstances of this case.  The municipal defendants do not claim that petitioners failed to exhaust administrative remedies before filing the lawsuit.  Nor do they contend that the trial court lacked jurisdiction to issue the preliminary injunction in the first instance based on petitioners' purported failure to exhaust administrative remedies.  The municipal defendants do not provide any legal analysis explaining how the exhaustion doctrine applies to prevent a court from modifying an injunction that they do not dispute the court had jurisdiction to issue in the first instance.  Nor do we see how the exhaustion doctrine could apply here given that "[c]ourts retain power to vacate or modify [injunctive] orders at any point."[4]  (*Butler*, *supra*, 4 Cal.5th at p. 738.)

We conclude that the trial court did not exceed its jurisdiction by modifying the preliminary injunction because petitioners failed to exhaust administrative remedies.

C.  *The Trial Court Did Not Abuse Its Discretion*

The municipal defendants argue in the alternative that if the trial court had jurisdiction to modify the preliminary injunction, then it abused its discretion by doing so.  We disagree.

---

**4**     The only authority the municipal defendants cite in support of the argument about administrative exhaustion is *Board of Police Commissioners v. Superior Court* (1985) 168 Cal.App.3d 420, which they cite for the proposition that an injunction will be set aside if it was issued before a petitioner exhausts administrative remedies.  That case is inapposite because it did not involve the modification of an injunction that the court had jurisdiction to issue in the first instance.  (*Id.* at pp. 425-426.)

The municipal defendants argue that the trial court abused its discretion under section 533 because petitioners failed to carry their burden of demonstrating that there had been any change in the law and "could" not "present evidence demonstrating" that there had been a material change in facts or that the ends of justice would be served by modification. (§ 533.) We reject the argument for two reasons. First, it is irrelevant whether petitioners carried their burden of demonstrating that there had been a change in the law, because the trial court did not base its ruling on any change in the law.

Second, contrary to the municipal defendants' argument, petitioners did in fact submit ample evidence in support of their motion. The municipal defendants do not provide any legal analysis showing that the evidence submitted by petitioners was insufficient to carry petitioners' burden in the trial court of demonstrating that there had been a material change in facts or that the ends of justice would be served by modification. In the absence of such analysis, we will not review the trial court's "factual findings for substantial evidence." (*Butler*, *supra*, 4 Cal.5th at p. 739.) "We are not required to develop a party's argument for it nor to search the record on our own seeking deficiencies." (*LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 955.) Because the municipal defendants do not provide any legal analysis on how petitioners' evidence is not sufficient, the municipal defendants' argument is forfeited. (*Ibid.*)

The municipal defendants also argue that the evidence supporting the motion was inadequate and inadmissible. In support of that argument, they point out that the trial court did not expressly rule on their evidentiary objections. But the municipal defendants

19

do not support the point with any legal analysis or citation of legal authority concerning (1) whether the trial court had an obligation to expressly rule on the objections, (2) how under the applicable standard of review on appeal the trial court erred by not doing so, and (3) whether any such error was prejudicial. We will not develop an appellant's argument for them (*Los Angeles Unified School District v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 498), and we consider forfeited arguments not supported by any legal analysis or authority (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 160-161). Because the municipal defendants do not adequately develop this argument with any legal analysis or authority, we consider it forfeited. (*Ibid.*)

The municipal defendants next make several arguments about the trial court's reliance on petitioners' declarations filed in support of the motion to modify. The arguments have no merit. The municipal defendants first contend that the declarants' new assertions that their properties are in fact governed by CC&Rs are not reliable or credible because the declarants had previously declared otherwise. In modifying the preliminary injunction, the trial court acknowledged the conflict in the evidence but, by way of example, found Mary D.'s "statements of confusion credible." The trial court acted well within its authority to resolve the conflict in evidence and to assess the declarants' credibility. (*Whyte*, *supra*, 101 Cal.App.4th at p. 1450.) The municipal defendants' argument amounts to nothing more than an attack on how the trial court resolved the conflicting evidence and assessed witness credibility. We do not reweigh the evidence (*ibid.*), so the argument fails.

With respect to the declarants' newly discovered evidence about their properties, the municipal defendants also contend that the trial court should have applied the equitable doctrine of judicial estoppel. "'Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. The doctrine serves a clear purpose: to protect the integrity of the judicial process.'" (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.) The doctrine applies "when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Id.* at p. 183; *Eng v. Brown* (2018) 21 Cal.App.5th 675, 701.) The municipal defendants' only argument on this issue is the singular, conclusory statement that judicial estoppel should apply here "because Petitioners played 'fast and loose' with the court." The municipal defendants do not provide any legal analysis explaining how the doctrine applies under the circumstances of this case or how the trial court erred by not applying it. We "disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.) Because the municipal defendants fail to develop the argument with cogent legal analysis, we consider the argument forfeited.

21

Moreover, the argument appears meritless on its face.  For example, Mary D. explained that her prior statements that the properties were not subject to CC&Rs were the product of ignorance and mistake.

D. *Postinjunction Contempt Proceedings*

The municipal defendants appealed only from the trial court's July 23, 2021, order modifying the preliminary injunction.  The municipal defendants do not contend otherwise.  They nevertheless make numerous arguments about contempt proceedings that occurred in October 2021 and February 2022, *after* the order from which they appealed.

"Our jurisdiction extends to 'judgment[s] or order[s] appealed from' and not to any 'decision or order from which an appeal *might have been taken*.'  (§ 906, italics added.)"  (*Van v. LanguageLine Solutions* (2017) 8 Cal.App.5th 73, 80.)  Because the municipal defendants appeal only from the trial court order modifying the preliminary injunction, we do not have jurisdiction to consider the arguments about the contempt proceedings that occurred after the court issued that order.

To the extent that the municipal defendants argue that the contempt proceedings are nevertheless relevant on appeal from the order under review because they demonstrate the effect that the modified preliminary injunction has had, they are mistaken.  "It is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment [or order], an appellate court will consider only matters which were part of the record at the time the judgment [or order] was entered."

22

(*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.)  Nothing that has happened in the trial court since the court modified the preliminary injunction is relevant to our analysis of the appeal from that order because it was not before the court when it modified the injunction.  We accordingly do not consider any argument or evidence concerning proceedings that occurred after the order under review.  We also deny the municipal defendants' request for judicial notice of the hearing transcripts from proceedings that occurred after the order modifying the injunction, because the documents are not relevant to any material issue on appeal.  (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2.)

### DISPOSITION

We affirm the July 23, 2021, order modifying the preliminary injunction. Vacation Rental and Allicia Davis shall recover their costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

CODRINGTON
Acting P. J.

SLOUGH
J.

23